UNITED STATES of America, Appellee,

v.

James Dwight SNYDER, Appellant.

No. 82–5081.

United States Court of Appeals,
Fourth Circuit.

Argued June 6, 1985.

Decided July 3, 1985.

Rehearing and Rehearing In Banc
Denied July 29, 1985.

Larry E. Blount, for appellant.

Elizabeth Trimble, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before CHAPMAN and SNEEDEN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

James Dwight Snyder was indicted in the District of Maryland on three counts of tax evasion (26 U.S.C. § 7201) and three counts of failure to file income tax returns (26 U.S.C. § 7203) for the years 1973, 1974, and 1975. The indictment also contained one count of concealing property from an IRS levy (26 U.S.C. § 7206(4)). Following a twelve day trial, Snyder was convicted of tax evasion for the years 1974 and 1975, convicted on all three counts of failure to file, and convicted on the count for concealing property from levy. He was acquitted of tax evasion for 1973.

In his original brief appellant raised four exceptions, each claiming error in the trial judge's charge to the jury. Appellant filed a supplemental brief shortly before argument which raised the point that the convictions for failure to file were lesser included offenses under the tax evasion counts and therefore would not support a separate conviction and sentence. We conclude (1) that certain language in the jury charge was erroneous, but under the facts in this case any error was harmless, and (2) that appellant's convictions of both tax evasion and failure to file for the years 1974 and 1975 may not stand. Therefore, we affirm appellant's convictions for tax evasion in 1974 and 1975, for failure to file in 1973, and for concealing property from an income tax levy. We remand to the district court with directions to set aside appellant's convictions for failure to file income tax returns for the years 1974 and 1975.

I

Appellant was a cabinet maker in Maryland and filed federal income tax returns and paid his taxes through 1970. Beginning in 1971, however, he paid no taxes and in 1973, 1974, and 1975 he filed returns containing no financial information. Instead, appellant attached to his return materials expressing various forms of protest against the federal tax system and the way federal revenues are spent. He made no attempt to calculate his tax and made no payments. For each of these years he was notified by an Internal Revenue Service letter that the materials he had filed were not acceptable as tax returns because they lacked the requisite information. After the IRS began a criminal investigation in 1980, he filed amended forms for 1973, 1974, and 1975, but these forms contained no financial information and each contained the notation, "objection self-incrimination," in all the boxes that called for information.

In 1973 the IRS began tax investigation of Snyder for the years 1971 and 1972, but it was terminated without a recommendation to prosecute although a civil assessment of taxes was made. Appellant challenged the 1972 assessment in the Tax Court and appealed an adverse opinion to this court without success. When he failed to pay the assessment the IRS began collection efforts in 1980, resulting in levies being served on a number of people owing money to Snyder.

By analyzing his net worth, the government determined that Snyder had received substantial income during the periods in question. During these years he purchased airplanes, automobiles, real estate, and silver bullion, and loaned substantial amounts of money. In 1970 he stopped

depositing money in banks and began conducting most of his financial transactions in cash or by use of third party checks. In 1975 he bought an airplane for $13,000, of which $5,000 was cash presented in a paper bag. He paid $3200 cash for a pickup truck during the same year and loaned $10,000 in cash to a church home for the aged. In 1974 he made a $14,000 loan to an attorney, of which $2,000 was in cash and the remainder in third party checks. He advised people who owed him money to pay him in cash.

Snyder also attempted to conceal his property when the IRS began serving levies upon people who owed him money. On at least five occasions he gave debtors false documents to show the IRS in an effort to conceal his participation in the loans. Snyder advised attorney Toston, to whom he had loaned $14,000, to pay off the balance on the loan because the IRS was about to levy. A levy was served on Toston and he showed it to Snyder. Two days later Toston found a receipt in his mailbox signed by Snyder and indicating that the loan had been paid off. Snyder told Toston that an individual named Duling had paid off Toston's debt, and Snyder gave Toston a note stating that Toston owed Duling $12,000, which was due on the same date as the original note to Snyder. Duling was a tenant in one of Snyder's rental properties and testified that he had not paid off any debt owed by Toston and did not lend Toston any money.

## II

There is no merit to appellant's claim that the trial judge erroneously refused to charge the jury regarding his claim of reliance upon the advice of attorneys when he made his fifth amendment assertions on his tax returns. Snyder's testimony was not sufficient to justify such a charge, but the trial judge did give a very fair and complete charge as to a defendant's good faith misunderstanding of the law. In response to a question of whether he consulted an attorney as to his right to claim a fifth amendment privilege, Snyder answered:

Well, I talked to attorneys off and on, different attorneys over the years. And the attorneys say that's correct, the Fifth Amendment is legal to take on your return, but he says what will happen is probably you will be harassed for doing it.

He later testified that he had talked with an attorney named Stauffer about 1970 and stated:

He is from Oakland, yes, I think if I remember I met some attorneys maybe here in Baltimore when we were down here on a couple different occasions. Just recently an attorney come in the office up at the Justice Department. I can't tell you his name. A lot of time these lawyers they know me, but I don't know them, from the news coverage and so, and they will stop and talk a few words and something said about it, and that's the impression that I have gotten from all of them that I have talked to.

These claims are not sufficient to justify a specific charge that Snyder was acting upon advice of counsel, but the judge gave the following charge with respect to his claim of good faith as to the failure to file counts:

Even if you find that the Defendant erroneously claimed his Fifth Amendment privilege, his conduct would not be willful if you find that he acted in accordance with a good faith misunderstanding of the law, based upon, among other things, a good faith reliance on judicial decisions of the Federal Courts or a good faith belief that the documents filed for the taxable years 1973, '74, '75 constituted, in each case, an income tax return. The Defendant's views need not be legally correct, just as long as he honestly and in good faith really and truly believed and acted upon them.

If you find that the Defendant in good faith reasonably did not believe that he was required to file a tax return or that he believed that he had filed tax returns, or that he did not understand the law as

it applied to him, then, you should acquit him of the charges brought. These three counts.

A good faith misunderstanding of the law, as distinct from disagreement of the law, is a defense.

### III

■ There is no merit to appellant's claim that a portion of the trial judge's charge relating to net worth improperly shifted the burden of proof to him. The government's testimony showing Snyder's net worth was introduced to show that he had taxable income for the years in question. There was no effort to establish the exact amount of the tax due. Snyder's accountant, John Devitt, testified that his beginning point for a net worth determination was "within pennies" of that used by the IRS. Devitt's revenue and expense analysis, as well as his net worth determination, showed that Snyder had taxable income in each of the years in question.

The complained of charge provided:

The prosecution is not required without suggestion or explanation from the defendant to investigate every conceivable source of nontaxable funds, and if it appears from the evidence in the case that the defendant did not provide an explanation as to a source of his net worth, then, you may consider that failure to explain as one of the circumstances, bearing in mind that the defendant does not have to produce any evidence, and bearing in mind further that the defendant's accountant testified to what his findings were. Apparently, there was a relative degree of agreement.

The instruction given in this case placed no burden on the appellant to produce any evidence. Rather, it reminded the jury that a defendant has no burden to produce any evidence. In *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), the Supreme Court clearly warned defendants in net worth cases: "Once the Government has established its case, the defendant remains quiet at his peril." *Id.* at 138–39, 75 S.Ct. at 136–37.

### IV

Appellant complains that the trial judge's charge regarding the legal sufficiency of a "return" was erroneous because it failed to include language about a defendant's good faith assertion of his fifth amendment privilege. The charge on this point, however, when read as whole, rather than the one sentence lifted from the charge by the appellant, is quite complete and correct and covers the good faith defenses raised by appellant.

### V

■ Appellant contends that a portion of the trial judge's charge improperly relieved the government of its burden of proving that the appellant acted willfully and, therefore, under our opinion in *United States v. Eilertson*, 707 F.2d 108 (4th Cir. 1983), his conviction should be reversed. In reading the jury charge as a whole, it appears that the trial judge mentioned and properly explained willfulness on numerous occasions as to each and every count in the indictment. There can be no question that the jury understood the meaning of willfulness and also understood that this was an essential element that the prosecution must prove beyond a reasonable doubt in order to secure a conviction on any of the counts. At one point in the charge, however, the judge used language that has been previously used in the District of Maryland which we condemned in *United States v. Eilertson*. After many explanations of willfulness, the trial judge stated:

Now, back to willful again. Willful is the intentional violation of known legal duty. The defendant's conduct is not willful if he acted through negligence, inadvertence, or mistake, or due to a good faith misunderstand. If you find that the defendant believed in good faith that he was acting within the law and that the defendant was not guilty of careless disregard as to whether or not he had the right to so act, you must find the defendant not guilty for lack of proof of willfulness.

In *Eilertson* we stated:

The United States Attorney has admitted that he tried the case on a theory of careless and reckless disregard. Further, it is undisputed that he used this term nineteen times in his rebuttal argument to the jury. While the instruction itself may not have required reversal, there can be no mistake that the United States Attorney's trial of the case on this theory and his many references to careless disregard in his reply argument brought the matter home forcefully to the jury so that it cannot be overlooked.

*Id.* at 110.

In the present case neither the prosecution nor the defendant mentioned the issue of Snyder's careless disregard of his right to act as he did. These words were not used in jury argument nor were they used in questioning any of the witnesses. The theory of the government's case was that Snyder's actions were all willful. In a letter written to the IRS during the years covered by the prosecution, Snyder stated:

You mention the possibility of charging me with "willful failure to file." "Willful" means "criminal". I have filed. I have filed in a patriotic and constitutional manner, albeit under protest. If you would call my standing up for constitutional liberties "willful" you would call the noble acts of Jefferson, Hancock, Washington, Adams and Patrick Henry you would call all of them willful."

Since the issue of "careless disregard" never entered this case except for one sentence in the charge, and since the theory of the prosecution was always that the defendant acted willfully and never that he acted with careless disregard, this case is distinguishable from *Eilertson,* and the mention of "careless disregard" is clearly harmless error.

### VI

■ In appellant's supplemental brief he raises the question of whether he may be convicted of tax evasion and of failure to file tax returns for the same years. Appellant argues that failure to file is a lesser included offense and the indictment in each of the tax evasion counts contained language that Snyder "did willfully and knowingly attempt to evade and defeat the said income tax due and owing by James Dwight Snyder to the United States of America for said calendar year by failing to make such income tax return to the said Internal Revenue Service. . . ."

In *United States v. Buckley,* 586 F.2d 498 (5th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979), the court held:

Where one of the affirmative acts of evasion relied upon by the government in proving attempted tax evasion under Section 7201 is the failure to file an income tax return, failure to file is a lesser included offense, and Congress did not intend for the defendant to be punished for both offenses. *United States v. Newman,* 468 F.2d 791, 796 (5th Cir.1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).

Although the government concedes that punishment may not be imposed under both statutes, it nonetheless argues that the *convictions* for failure to file should stand for the years 1970, 1973 and 1974, reasoning that a conviction without a sentence imposed thereupon is harmless. We disagree. Where one offense is included in another, it cannot support a separate conviction and sentence. *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *United States v. York,* 578 F.2d 1036, 1040 (5th Cir.1978). Thus, in situations such as the present one, where a defendant is improperly convicted for a lesser included offense, the proper remedy is to vacate both the conviction and the sentence on the included offense, leaving the conviction and the sentence on the greater offense intact.

586 F.2d at 504–05 (Emphasis in original).

We adopt this reasoning and remand the case to the district court with directions to vacate the convictions and sentences under the failure to file counts for the years 1974 and 1975.

AFFIRMED IN PART AND REMAND-
ED WITH INSTRUCTIONS.