**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 98-4223

JOHN JOSEPH ARMETTA,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, District Judge.
(CR-95-269)

Argued: March 5, 1999

Decided: September 15, 1999

Before WIDENER and NIEMEYER, Circuit Judges,
and BROADWATER, United States District Judge
for the Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Eric David Placke, Assistant Federal Public Defender,
Greensboro, North Carolina, for Appellant. Douglas Cannon, Assis-
tant United States Attorney, Greensboro, North Carolina, for Appel-
lee. **ON BRIEF:** Louis C. Allen, III, Federal Public Defender,
Greensboro, North Carolina, for Appellant. Walter C. Holton, Jr.,
United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John Joseph Armetta was convicted and sentenced for various offenses stemming from his involvement in a scheme to roll back odometers on motor vehicles and resell them to legitimate retailers. He challenges his convictions and his sentence on multiple grounds, including venue, sufficiency of the evidence, jury instructions, and loss calculations under the Sentencing Guidelines. Finding no reversible error, we affirm.

I

A federal grand jury sitting in the Middle District of North Carolina, indicted Armetta on one count of conspiracy to roll back odometers and to transport in interstate commerce forged and altered securities (motor vehicle title certificates), as well as 24 substantive counts of odometer tampering. See 18 U.S.C.§ 371 (conspiracy), § 2 (aiding and abetting), 15 U.S.C. §§ 1984, 1990c (odometer tampering), 49 U.S.C. §§ 32703(2), 32709(b) (renumbered odometer tampering statutes). The charges were based on Armetta's involvement, together with three codefendants, Ali Alami, Richard Warren Carroll, and Charles Granata, in a scheme to buy high-mileage cars at auctions, roll back the odometers, launder the titles, and wholesale the "clocked" cars to legitimate retailers for resale to unsuspecting consumers.

Armetta was tried jointly with Carroll and Granata in an eight day trial in March 1996. On the morning of jury selection, Alami, the apparent ringleader of the group, pled guilty and testified as a witness for the prosecution. The evidence introduced at trial showed that Armetta served as a wholesale outlet for the rolled-back cars. Before Armetta's involvement, Carroll, Granata, and Alami [1] launched the

_____

[1] We have already affirmed the convictions and sentences of Alami, see United States v. Alami, 122 F.3d 1063 (4th Cir. 1997) (unpublished),

2

scheme, creating dummy corporations; obtaining the necessary state licenses; registering these corporations at various auto auction houses, including one in Greensboro, in the Middle District of North Carolina; and buying high-mileage cars at these auctions under the names of the dummy corporations. Alami then had these cars transported to Baltimore or Northern Virginia where he directed two individuals to perform the mechanical task of rolling back the odometers. The other defendants then altered the true odometer readings on title certificates and submitted the altered titles to state motor vehicle departments for clean or "washed" titles with the false odometer readings printed on them. In the wholesale vehicle business, it was not common practice for wholesalers to obtain new titles for transfers because the transferor could simply attach an assignment sheet.

Armetta, who had more than twenty years experience in the used car business, became involved in the operation when he was working as a salesman at Murray's Motors. Alami testified that when he found out that Armetta was the salesman on some of his cars at Murray's, he approached Armetta at an auto auction, and Armetta "agreed that instead of going through the second party, perhaps he should come directly and get the cars from me and market it." Accordingly, between April 1994 and May 1995, Armetta, operating as an independent salesman for George's Motors, sold Alami's cars at wholesale to retail dealerships in the Baltimore, Maryland area.

In July 1994, Loyola Ford, to whom Armetta had previously sold approximately 25 used cars, demanded its money back from the prior owner of one of Armetta's cars (a dummy corporation set up by Armetta's codefendants) because it had been unable to verify the chain of title. Several hours later, Armetta came to the dealership and appeared "quite upset." When the Loyola Ford representative informed Armetta about the title problem, saying that he didn't know whether the cars were "clocked" or stolen, Armetta delivered a check and repurchased that car, as well as at least five other cars. Loyola Ford stopped buying cars from Armetta.

_____

Carroll, and Granata, see United States v. Carroll, 166 F.3d 334 (4th Cir. 1998) (unpublished).

3

Five months after the Loyola Ford incident, David Snyder, the general manager at Bud Schmidt Buick, which had bought a Buick from Armetta, told Armetta that a warranty check with the manufacturer revealed an odometer rollback. Bud Schmidt Buick rescinded the purchase, explaining that it did not wish to do any more business with Armetta. Snyder testified that it was fairly uncommon for a dealer to return a car to a wholesaler, especially for a suspected rollback.

Despite these incidents, Armetta continued to sell vehicles for Alami.

At the close of the government's evidence, the district court granted Armetta's unopposed motion for judgment of acquittal on three of the substantive odometer tampering counts and denied his motion on the remaining counts. The court denied Armetta's motions again at the close of all of the evidence. The court also denied Armetta's request for a "reasonable doubt" jury instruction and for an addition to the "aiding and abetting" instruction, stating that one cannot aid and abet a completed crime. Armetta objected to the "willful blindness" and Pinkerton jury instructions.

The jury found Armetta guilty on all remaining counts against him.

At sentencing, Armetta, along with the other defendants, challenged the loss calculations contained in the presentence report, but the district court overruled the objections, concluding that the focus of the loss calculations had to be the effect of the fraud on the ultimate consumers, not the retailers, as suggested by the defendants. Consolidating all of Armetta's convictions for sentencing purposes, the court calculated an adjusted offense level of 16 which, with a criminal history category of I, yielded a sentencing range of 21-27 months imprisonment. The district court sentenced Armetta to 22 months imprisonment, 3 years supervised release, $1100 in special assessments, and $9999.90 in restitution.

This appeal followed.

II

Armetta contends first that venue was not properly laid in the Middle District of North Carolina -- the site of the Greensboro Auto Auc-

4

tion where Armetta's codefendants, operating through sham corporations, purchased the high-mileage cars that Armetta eventually sold as rollbacks in Maryland. The government maintains that venue was appropriate there because odometer tampering is a "continuing offense" and because Armetta, as an aider and abettor, could be tried with the principals. We agree that the Middle District was an appropriate venue.

A defendant is constitutionally entitled to a trial in the state, see U.S. Const. art. III, § 2, cl. 3, and the district, see U.S. Const. amend. VI, where the crime was committed. See also Fed. R. Crim. P. 18. When Congress does not provide a specific venue provision in a criminal statute, "`the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" United States v. Cabrales, 524 U.S. 1, 6-7 (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)). "An aider and abettor may be prosecuted in the district in which the principal acted in furtherance of the substantive crime." United States v. Kibler, 667 F.2d 452, 455 (4th Cir. 1982) (citing Hyde v. United States , 225 U.S. 347, 362-67 (1912)); cf. Cabrales, 524 U.S. at 7 (finding venue improper in part because the government had not charged the defendant as an aider and abettor).

In this case, Armetta was properly charged as an aider and abettor on each substantive odometer tampering count. An individual is guilty of aiding and abetting if he has "knowingly associated himself with and participated in the criminal venture." United States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996) (en banc) (internal quotation marks and citation omitted). Armetta participated in the criminal venture by selling the cars with rolled back odometers to legitimate retail outlets for resale, and he knowingly associated himself with the criminal venture by agreeing to sell cars for Alami and continuing to do so in the face of evidence from dealers that the cars were "clocked." Armetta had two decades of experience in the used car market, and it is clear that a jury could conclude that Armetta was aware of and knowingly associated himself with a criminal venture. As an aider and abettor, therefore, regardless of where he acted, Armetta can be tried properly in any district in which the principal acted in furtherance of the substantive crime. See Kibler, 667 F.2d at 455.

5

Alami, by his own testimony, performed acts in the Middle District of North Carolina to further substantive violations of the odometer tampering statutes, such as listing himself as a salesman of a sham leasing company and then buying and selling cars at the Greensboro Auto Auction with the intention of causing the odometers of those cars to be reset in violation of the odometer tampering statutes. Because venue would be proper for Alami in the Middle District of North Carolina, it was also proper for Armetta as an aider and abettor.

Armetta argues that venue was not proper under this theory because only the individuals who physically performed the rollbacks were principals and those individuals acted only in Virginia and Maryland. This argument fails, however, because it ignores the language of the odometer tampering statute, which criminalizes not only resetting odometers but also "hav[ing]" them reset. 49 U.S.C. § 32703(2); cf. Schmuck v. United States , 489 U.S. 705, 721 (1989) ("The offense of odometer tampering includes the element of knowingly and willfully causing an odometer to be altered"). Insofar as Alami directed that the odometers be reset, he was a principal.

Because venue was proper under an aiding and abetting theory of liability, we need not address the other theories of venue based on where Congress intended venue to lie under the odometer tampering statutes or whether odometer tampering is a "continuing offense."

III

Armetta also argues that he is entitled to a judgment of acquittal because there was insufficient evidence to support the verdict.

We must sustain the jury's verdict if, reviewing the evidence in the light most favorable to the government, we determine that there was substantial evidence to support Armetta's convictions. See Glasser v. United States, 315 U.S. 60 (1942); United States v. Russell, 971 F.2d 1098, 1109-10 (4th Cir. 1992). On review of the record, we conclude that there was substantial evidence as to both objects of the charged conspiracy, as well as the substantive counts.

As to the conspiracy count, we have held that because of its clandestine nature, a conspiratorial agreement can be proved by circum-

6

stantial evidence, including inferences from the conduct of the alleged participants. See Burgos, 94 F.3d at 857-58. Further, an individual can be tied to that conspiracy by evidence of a "slight connection," if that evidence demonstrates beyond a reasonable doubt that the defendant willingly participated and intended to further the goals of the conspiracy. Id. at 862.

The first object of the conspiracy in this case was the odometer tampering. Ample circumstantial evidence was presented to support the conclusion that Armetta was a knowing member of this conspiracy. Armetta had been in the used-car business for over two decades, including selling cars at Murray's Motors, one of Alami's original outlets for his "clocked" cars. Also, Armetta was put on notice more than once that the cars he was getting from Alami had been rolled back. And finally, all of the title certificates for the vehicles Armetta received from Alami were new, despite the fact that it was neither common nor necessary for a dealer to spend time and money obtaining new title certificates when original ones could be assigned repeatedly.

The second object of the conspiracy was the interstate transportation of altered securities, in this case, motor vehicle titles. While no evidence tied Armetta to participation in this aspect of the scheme, Armetta need not have participated in any of the title-altering activity to have participated in the conspiracy itself with the intent to further the goals of the conspiracy. See Burgos, 94 F.3d at 862. As the government points out, the two objects of the conspiracy are interrelated. Given that Armetta knew that the odometers had been altered, it is inconceivable that he could not have known that the titles that accompanied the cars were "washed."[2]

_____

[2] Armetta argues that even if the evidence on the conspiracy count as to rollbacks is sufficient, the evidence connecting Armetta to the title laundering is inadequate. The government does not contest the proposition that if a jury might have returned a guilty verdict on one of two alternate grounds, and one theory of the prosecution is legally unsound, the verdict cannot stand. However, our conclusion that the government produced sufficient evidence as to both prongs of the conspiracy forecloses Armetta's argument that the district court erred in denying him a new trial with respect to the conspiracy count.

7

As to the substantive counts, "[a] defendant is guilty of aiding and abetting if he has knowingly associated himself with and participated in the criminal venture." Burgos, 94 F.3d at 873 (internal quotation marks and citation omitted). As already discussed, aiding and abetting liability is appropriate because Armetta had the requisite intent, and he participated in the odometer fraud scheme by serving as a reliable outlet for the "clocked" cars. Armetta argues primarily that aiding and abetting liability cannot stand because one cannot aid and abet a completed crime, and the "criminal venture" at issue here was complete once the individuals physically reset the odometers. This argument fails, however, because it discounts both (1) the nature of the odometer tampering offense, which requires a market (that Armetta willingly and unquestioningly supplied) for the "clocked" cars and (2) the language of the statute which refers not only to the act of tampering, but also "having" an odometer altered (or, under the old statute, "causing" it to be altered). 49 U.S.C. § 32703(2). Thus, the crime was not complete once the odometers were reset. Rather, Armetta was aiding and abetting the other defendants in "having" them reset by providing a ready market.

IV

Armetta next contends that the jury instructions denied him a fair trial. Specifically, Armetta contests the court's failure to give a reasonable doubt instruction and his requested addition to the aiding and abetting instruction (that one cannot aid and abet a completed crime), as well as the court's giving of the "willful blindness" and Pinkerton instructions. We review jury instructions "as a whole" to determine whether they fairly summarize the applicable law. United States v. Snyder, 766 F.2d 167, 170 (4th Cir. 1985).

Armetta's claim that the trial court erred by failing to define reasonable doubt conflicts with circuit precedent holding that "a district court need not . . . define the term `reasonable doubt.'" United States v. Williams, 152 F.3d 294, 298 (4th Cir. 1998); see also United States v. Reives, 15 F.3d 42, 45 (4th Cir. 1994); United States v. Adkins, 937 F.2d 947, 950 (4th Cir. 1991).

Nor did the district court abuse its discretion in declining Armetta's invitation to instruct the jury -- in addition to the aiding and abetting

8

instruction already given -- that one cannot aid and abet a completed crime. Armetta's proposed addition would not have clarified the law; in fact, Armetta appears to have misconstrued the nature of odometer tampering, ignoring the "causing" aspect of the offense and rendering Armetta's "clarification" misleading. See Part II, supra.

The court also did not abuse its discretion in giving the "willful blindness" instruction. The court instructed the jury that

> [t]he element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would have otherwise been obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be [inferred] from willful blindness to the existence of the fact. It is entirely up to you whether you find any deliberate closing of the eyes, and the inferences to be drawn from such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

We have found the "willful blindness" instruction appropriate where a defendant claims lack of guilty knowledge and there is evidence of deliberate ignorance, see United States v. Guay , 108 F.3d 545, 551 (4th Cir. 1997); United States v. Abbas, 74 F.3d 506, 513 (4th Cir. 1996), and the instructions make clear that mistake, reckless disregard for the truth, or negligence are not sufficient to support an inference of guilty knowledge, see United States v. Mancuso, 42 F.3d 836, 846 (4th Cir. 1994).

As discussed above, the rollbacks would have been"obvious" to Armetta, given his extensive experience in the used-car field and the fact that he was put on notice at least twice that Alami's cars were "clocked." Moreover, contrary to Armetta's argument, the instructions explicitly state that mistake or negligence are not a sufficient basis for an inference of guilty knowledge. Accordingly, we find no error in the court's decision to give the "willful blindness" instruction.

9

Finally, Armetta also claims that the Pinkerton [3] instruction was not warranted by the evidence at trial and that the government independently decided not to pursue Pinkerton liability against Armetta earlier in the trial. Thus, Armetta contends, we cannot tell whether the guilty verdicts on the substantive counts arose from Pinkerton liability, which would be impermissible, or from aiding and abetting liability, and this ambiguity therefore requires reversal of the convictions.[4]

It is true that the government agreed to forego Pinkerton liability in dismissing several counts of the indictment against Armetta. However, the government clearly did not intend to waive Pinkerton liability as to the entire indictment against Armetta, as evidenced by the fact that the government lodged no objection to the Pinkerton jury instruction as to Armetta. Further, we conclude that the evidence was sufficient to show that Armetta, acting as an unwavering outlet for "clocked" cars, was a knowing and willful member of the conspiracy, and all of the substantive offenses are clearly foreseeable aspects of that conspiracy. Thus, we find no error in the giving of the Pinkerton instruction.[5]

_____

[3] Under Pinkerton v. United States, 328 U.S. 640 (1946), a conspirator may be held liable for the substantive crimes of his coconspirators if the government proves beyond a reasonable doubt that the substantive offense was committed by one of the members of the conspiracy, while the defendant was a member of the conspiracy, and the offense was reasonably foreseeable as part of the conspiracy.

[4] The government's contention that Armetta failed to object to the Pinkerton instruction is mistaken, so we review for abuse of discretion rather than plain error. See United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992).

[5] Armetta filed a supplemental brief arguing that the government obtained coconspirator Alami's testimony against him in violation of 18 U.S.C. § 201(c)(2) by agreeing to dismiss charges and offer leniency in exchange for Alami's testimony against Armetta. This claim is foreclosed by our holding in United States v. Richardson, No. 98-4139, 1999 WL 686892 (4th Cir. Sept. 3, 1999), that this kind of conduct by the government does not violate § 201(c)(2).

10

V

Finally, Armetta challenges his sentence, arguing that the district court erred in calculating the amount of loss attributable to Armetta for sentencing purposes under U.S.S.G. § 2F1.1(b)(1). The definition of "loss" is a question of law which we review de novo, while the amount of loss attributable to a particular defendant is a question of fact which we review for clear error. See United States v. Chatterji, 46 F.3d 1336, 1340 (4th Cir. 1995).

We conclude that the district court used the proper measure of loss under the Sentencing Guidelines. The court stated that it was

> not bound by the loss or the difference in values between one wholesaler to another, because cars are not meant to be consumed by wholesalers; they're meant to be consumed and used by consumers. So, the value of loss, to this Court is determined by what it cost the consumer, not what it cost the wholesaler.

This interpretation accords with the Sentencing Guidelines which mandate that, in a consumer fraud case involving the misrepresentation of the value of an item, loss is calculated as the difference between the amount the victim paid for the product and the amount for which the victim could resell the product now. See U.S.S.G. § 2F1.1, comment. (n.8(a)).

Further, the district court did not err in calculating the loss. Under the Sentencing Guidelines, "the loss need not be determined with precision." Id. at comment. (n.9). The district court properly rejected the defendant's version of calculating the loss per car because it only accounted for the loss among wholesalers and disregarded the loss in the retail market associated with the fact that the car was now, as a result of the rollbacks, "TMU" (Total Mileage Unknown) -- an undesirable status for marketing purposes since it inspires distrust in the retail consumer. This appears to be a reasonable approach to calculating loss, and it has already been accepted for Armetta's codefendants by two other panels of this Court. See United States v. Carroll, 166 F.3d 334 (4th Cir. 1998) (unpublished); United States v. Alami, 122 F.3d 1063 (4th Cir. 1997) (unpublished).

11

Accordingly, the judgment of the district court is

<u>AFFIRMED</u>.

12