2003 UT App 179

**STATE of Utah, Plaintiff and Appellee,**

v.

**Thomas Howard SMITH, Defendant and Appellant.**

**No. 20010817–CA.**

Court of Appeals of Utah.

June 5, 2003.

Linda M. Jones, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney Generals Office, Mark W. Baer, Janis K. Macanas, and Kris C. Leonard, Assistant Attorneys General, Salt Lake City, for Appellee.

Before JACKSON, P.J., and DAVIS and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Defendant Thomas Howard Smith appeals his convictions for failure to file a tax return, a third degree felony, in violation of Utah Code Ann. § 76–8–1101(1)(b) (1995), and willful evasion of income tax, a second degree felony, in violation of Utah Code Ann. § 76–8–1101(1)(c) (1995). We affirm his convictions, however, we reverse and remand the trial court's restitution order for reconsideration and the entry of substantive findings to support its eventual order.

## FACTS

¶ 2 Beginning in 1987, Smith stopped filing state income tax returns with the State of Utah. Due to his failure to file, the Utah State Tax Commission (Commission) performed non-filing audits on Smith for the years 1993 through 1995, resulting in an assessment against Smith. Smith petitioned for a redetermination, however, he failed to appear for a hearing on the matter and the Commission entered a default order affirming its earlier assessment.

¶ 3 In 1995, Smith operated a business out of his home through which he provided tax assistance, assistance with bankruptcy, and legal research to a variety of clients for a fee. The clients usually paid the fee by check to either the F.O.I.A. Research Center, the Citizen's Legal Library Trust, or to John Haas Burrell, and Smith deposited the money in similarly entitled bank accounts. Payments made directly to Smith were also deposited in the aforementioned bank accounts. Smith was either the sole signatory or had cosign-

ing authority on all three accounts. During 1995, Smith deposited over $66,000 in these three accounts. However, Smith filed no 1995 state tax return.

¶ 4 At various times throughout 1995, Smith withdrew over $7,500 from the F.O.I.A. account to pay the balance of the mortgage remaining on his mobile home and to pay the rental fees for space at his mobile home park. Smith also paid all of his 1995 personal utility bills from the F.O.I.A. account, as well as drew funds from each of the accounts to purchase groceries at Ream's, Dan's, and Smith's grocery stores.

¶ 5 In 1999, the Commission instituted an investigation into Smith. As a result, the Commission determined that Smith was running a home business and paying his personal expenses with business income that had been deposited in bank accounts for the F.O.I.A. Research Center, the Citizen's Legal Library Trust, and John Haas Burrell. Relying on the deposits received into these accounts, minus certain non-income transactions and subject to the standard set of deductions available to Smith, the Commission determined that Smith's taxable income for 1995 was $45,308.65.[1] The State then charged Smith with two counts of criminal tax evasion, each based upon a separate act of Smith and each relying on different facts to establish the required elements.

¶ 6 The trial court appointed counsel to represent Smith, however, after meeting with counsel, Smith asked the court to allow him to proceed pro se. The trial court consented to Smith's request, but then appointed Smith's former counsel in a standby capacity. Following a three-day jury trial, Smith was convicted of both charges and the court sentenced Smith to concurrent terms of zero to five years and one to fifteen years in prison. However, the court then suspended the prison term and placed Smith on probation, provided he cooperate with the Commission and file all of his outstanding tax returns. On September 7, 2001, Smith's standby counsel

---

1. The deductions used in calculating Smith's income did not include business deductions or other deductible expenses because Smith did not make an effort to establish these deductions with the Commission.

filed a timely notice of appeal.[2] On September 21, 2001, the State filed a timely motion to clarify the sentencing order with the trial court wherein the State, inter alia, requested that the trial court impose over $6,000 in restitution in addition to the punishment already imposed. On September 26, the trial court granted the State's motion. Smith's standby counsel then filed a timely notice of appeal from the clarification order. We consolidated these appeals, resulting in this opinion that addresses all of the issues raised by Smith and his counsel on appeal.[3] We affirm in part and remand in part.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Smith first argues that the trial court erred in refusing to merge the two charges of tax evasion. Smith's argument presents a question of law that we review for correctness. *See State v. Diaz*, 2002 UT App 288,- ¶ 10, 55 P.3d 1131, *cert. denied*, 63 P.3d 104 (Utah 2003).

¶ 8 Smith next argues that the trial court erred in failing to submit to the jury his proposed "Good Faith Defense" instruction. "Whether the trial court's refusal to give a proposed jury instruction constitutes error is a question of law, which we ... review for

2. Prior to standby counsel filing her notice of appeal, Smith had filed a pro se notice of appeal with this court. However, we granted standby counsel's motion to strike Smith's pro se notice following which this appeal was timely filed.

3. While Smith's counsel separated the arguments out as argument of standby counsel and argument of pro se defendant, each of the arguments presented were contained in one brief that comported fully with rule 24 of the Utah Rules of Appellate Procedure. While we find counsel's candor refreshing, so long as the brief and the arguments comport with the rules, we will address their merits.

4. The State argues that Smith failed to preserve this issue because any objection raised to the multiplicity of the charges was made prior to Smith's conviction. In making this argument, the State relies on a footnote included in *State v. Hawatmeh*, 2001 UT 51,¶ 17 n. 3, 26 P.3d 223. The State's reliance, however, is misplaced. The footnote states, in relevant part, "[*State v. Finlayson*, 2000 UT 10, 994 P.2d 1243] is not applicable to the instant case, however, because we are not dealing with *convictions* for aggravated kidnaping, but merely aggravated kidnaping charges." *Id.* The State interprets this language to mean that the issue of merger cannot be

correctness." *State v. Stringham*, 2001 UT App 13,¶ 11, 17 P.3d 1153 (quotations and citations omitted).

¶ 9 Smith also argues that the evidence was insufficient to support both convictions. "[W]e will reverse a jury verdict only when we find that the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *Id.* at ¶ 12 (quotations, citations, and alterations omitted).

¶ 10 Finally, Smith argues that under the circumstances of this case the trial court erred in ordering restitution. "[T]he imposition of restitution is a matter left to the discretion of the [trial] court." *State v. Robertson*, 932 P.2d 1219, 1233 (Utah 1997), *overruled on other grounds by State v. Weeks*, 2002 UT 98,¶ 24, 61 P.3d 1000.

## ANALYSIS

¶ 11 Smith argues that the trial court erred in failing to either merge his convictions because they implicate the doctrine of multiplicity or vacate one as a lesser included offense.[4] Under the Double Jeopardy

properly considered "until after a jury has rendered its verdict and defendant is subject to multiple *convictions* for the same act." However, a brief review of *Finlayson* clearly contradicts this interpretation. In *Finlayson*, the supreme court reversed the defendant's conviction after concluding that his trial counsel had provided ineffective assistance. *See* 2000 UT 10 at ¶ 26, 994 P.2d 1243. In drawing this conclusion, the court examined the nature of the charges arrayed against the defendant and determined that "the facts of this case do not support a conviction for aggravated kidnaping ... [y]et defendant's counsel made no objection to this charge, and failed to raise this *at any time, either during trial, or following the conviction on a motion to vacate.*" *Id.* at ¶ 24 (emphasis added). The court further stated that "[o]bjecting to the aggravated kidnaping charge *in the trial court* or moving to vacate the conviction would have precluded that court from properly allowing it." *Id.* at ¶ 25 (emphasis added).

Moreover, the specific procedural stance of *Hawatmeh* is vital to understanding footnote three. *Hawatmeh* presented the supreme court with an appeal from a magistrate's decision, made at the bindover phase, to merge an aggravated kidnaping charge into the other crimes

Clause of the United State's Constitution, the state may not twice punish a person for the same offense. *See* U.S. Const. amend. V; *see also Brown v. Ohio,* 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Here, Smith argues that his dual convictions violate this tenet either because one crime is a lesser included offense of the other, or because the acts were part of a single criminal episode.

¶ 12. "To identify a lesser included offense, we must first determine if the lesser offense is 'established by proof of the same or less than all the facts required to establish the commission of the offense charged.'" *State v. Yanez,* 2002 UT App 50,¶ 21, 42 P.3d 1248 (quoting *State v. Ross,* 951 P.2d 236, 241 (Utah Ct.App.1997)), *cert. denied* 53 P.3d 1 (Utah 2003); *see also State v. Wood,* 868 P.2d 70, 90 (Utah 1993) ("Under the Fifth Amendment, 'the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.'") (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)), *overruled on other grounds by State v. Mirquet,* 914 P.2d 1144 (Utah 1996). "If the greater offense 'cannot be committed without necessarily having committed the lesser, then the lesser offense merges into the greater crime.'" *Yanez,* 2002 UT App 50 at ¶ 21, 42 P.3d 1248 (quoting *Ross,* 951 P.2d at 241). Thus, unless the crimes involved "'have multiple variations,'" we will "look only to the statutory elements of the two crimes in making this determination." *Id.* (citation omitted). If, however, from the statutory language we conclude that it is possible for one statute to be a lesser

included offense of the other, "'we must look beyond the statutory elements' and compare the evidence." *Id.* (citation omitted).

█ ¶ 13 In the instant case, Smith was convicted of violating both Utah Code Annotated section 76–8–1101(1)(b) (Subsection (1)(b)) and Section 76–8–1101(1)(c) (Subsection (1)(c)). Subsection (1)(b), in relevant part, states:

> Any person who, with intent to evade any tax or requirement of Title 59 [the Utah Tax Code] or any lawful requirement of the State Tax Commission, fails to make, render, sign, or verify any return ... is guilty of a third degree felony.

Utah Code Ann. § 76–8–1101(1)(b) (1999).[5] Thus, to convict Smith of violating Subsection (1)(b), the State was required to prove that Smith failed to file a state tax return with the intent to evade any (a) tax, (b) requirement of Title 59, or (c) lawful requirement of the State Tax Commission.

█ ¶ 14 Subsection (1)(c), in relevant part, states, "[a]ny person who willfully attempts to evade or defeat any tax or the payment thereof is, in addition to other penalties provided by law, guilty of a second degree felony...." Therefore, to obtain a conviction of Smith for violating Subsection (1)(c), the State was required to prove that Smith willfully attempted to evade or defeat any tax or payment. Thus, because there are clearly multiple variations of conduct that would violate Subsection (1)(c), including the willful failure to file a tax return, we must look to the evidence to determine if Smith's conviction for violating Subsection (1)(b) is a lesser included offense of his conviction for violating Subsection (1)(c).[6]

alleged in the information. *See id.* 2001 UT 51 at ¶ 1, 26 P.3d 223. Thus, in footnote three, the court was merely explaining that double jeopardy considerations were not properly implicated at the bindover phase of a criminal prosecution. *See Ohio v. Johnson,* 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting [defendants] for such multiple offenses in a single prosecution."). Accordingly, by submitting his "Motion to Dismiss Multiplicious [sic] Charges," Smith preserved this issue.

5. Because the statute remained unchanged between 1995 and 1999, we cite to the 1999 version.

6. On appeal, Smith urges upon this court his view of the standard adopted by several federal circuit courts when interpreting federal criminal tax law. *See United States v. Doyle,* 956 F.2d 73 (5th Cir.1992) (reversing the defendant's convictions for willful tax evasion based upon the trial court's failure to submit a lesser included offense instruction after the defendant had raised a viable good faith defense); *United States v. Kaiser,* 893 F.2d 1300 (11th Cir.1990) (reversing the defendant's conviction for willful failure to file a

¶ 15 Here, after repeated attempts by the Commission to induce Smith to file a return for 1995 and pay any outstanding tax liability, the State charged Smith with willfully attempting to evade his 1995 income tax liability and failing to file his 1995 income tax return. To convict Smith of willfully attempting to evade his 1995 tax liability, the State provided evidence that Smith ran a business from his home that generated over $65,000 in revenue for the year. However, the entire corpus of the revenue stream was deposited in three bank accounts that were accessible to Smith, but that were not opened in his name or in the name of his business. The State further offered proof that periodically throughout 1995 Smith withdrew funds from these accounts to pay for personal expenses ranging from orthodontic care for his daughter to settling the balance owed by Smith on a mobile home contract. Finally, the State offered uncontroverted proof that Smith reported no income in 1995 and paid nothing in taxes for that year.

■ ¶ 16 To prove that Smith failed to file a tax return, in violation of Utah Code Annotated Section 76–8–1101(1)(b), the State showed that Smith not only failed to file a return, but, in fact, refused to file a return for 1995. Further, because intent "may be inferred from the actions of the defendant or from surrounding circumstances," *State v. Colwell,* 2000 UT 8, ¶ 43, 994 P.2d 177 (quotations and citation omitted), the State offered evidence of Smith's behavior and course of conduct from 1987 forward to show that Smith's failure to file was motivated by an intent to evade either (a) any tax, (b) any requirement of Title 59, or (c) any lawful requirement of the State Tax Commission. *See* Utah Code Ann. § 76–8–1101(1)(b). Thus, because the State relied upon materially different acts to prove that Smith violated both Subsection (1)(b) and Subsection (1)(c), Subsection (1)(b) is not a lesser included

tax return because the government had proved the lesser included offense as the act necessary to prove the greater offense); *United States v. Snyder,* 766 F.2d 167 (4th Cir.1985) (vacating defendant's conviction for failure to file a tax return after concluding that the charge was a lesser included offense of the defendant's conviction for tax evasion); *United States v. Buckley,* 586 F.2d 498 (5th Cir.1978) (vacating three of the defendant's convictions for willful failure to file a tax return as lesser included offenses to his convictions for willful tax evasion); *United States v. Newman,* 468 F.2d 791 (5th Cir.1972) (merging the defendant's convictions for willful failure to file a tax return with his convictions for willfully evading income tax). However, much like the courts of our sister states, *see, e.g., State v. Long,* 121 N.M. 333, 911 P.2d 227, 229 (N.M.Ct.App. 1995) (stating "[w]e have previously rejected a defendant's contention relying on federal law in a tax case because that law was not persuasive notwithstanding the similarity of state and federal tax statutes"), we will adopt the analysis and logic of federal courts only to the extent that we find the reasoning persuasive. Moreover, after examining the cases urged upon us by Smith, we have concluded that Smith has read the holdings of these cases, and their effect, too broadly.

The court in *Doyle* reversed the defendant's convictions not because the willful failure to file an income tax return is per se a lesser included offense of attempted willful tax evasion, but rather because the trial court had failed to instruct the jury that *under the facts of the case* the willful failure to file a tax return was a lesser included offense of willful tax evasion. *See Doyle,* 956 F.2d at 75–76. In *Kaiser,* the Eleventh Circuit vacated the defendant's conviction because the United States had relied solely upon the defendant's failure to file an income tax return to prove both his willful tax evasion charge and his willful failure to file a tax return charge. *See Kaiser,* 893 F.2d at 1307. In making this decision, the court stated "[t]he other circuits that have considered this issue have similarly concluded that *filing a false return is a lesser included offense of tax evasion by filing a false return* and that therefore consecutive punishments for both offenses are impermissible." *Id.* at 1306 (emphasis added). In *Snyder,* the Fourth Circuit adopted the analysis of the *Buckley* court stating " '[w]here one of the affirmative acts of evasion relied upon by the government in proving attempted tax evasion under Section 7201 is the failure to file an income tax return, failure to file is a lesser included offense, and Congress did not intend for defendant to be punished for both offenses.' " *Snyder,* 766 F.2d at 171 (quoting *Buckley,* 586 F.2d at 504). Finally, in *Newman,* the Fifth Circuit vacated the defendant's convictions for willful failure to file a tax return after deciding that the United States had relied on the defendant's willful failure to file as the required "willful act" to prove attempted tax evasion. *Newman,* 468 F.2d at 794, 796. Thus, Smith's interpretation of these cases is flawed and his invitation for us to adopt the reasoning of these cases is of little or no value because the logic used to merge or vacate the involved convictions mirrors our present lesser included offense jurisprudence. Accordingly, contrary to Smith's assertion, there is no shelter from his conviction in federal case law.

offense of Subsection (1)(c) in the case before us.

¶ 17 Smith also asserts that the two charges should merge as acts included within a single criminal episode. We disagree. Utah Code Annotated section 76–1–402 establishes:

A defendant may be prosecuted in a single criminal action for all separate offenses arising out of a single criminal episode; however, when the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision.

Utah Code Ann. § 76–1–402(1) (1999). In the instant case, there is no question that the State relied upon separate acts to convict Smith of his multiple violations, however, Smith argues that statements made by the Utah Supreme Court in *State v. Kimbel*, 620 P.2d 515 (Utah 1980), and *State v. Crosby*, 927 P.2d 638 (Utah 1996), enlarge the plain language of section 76–1–402. Smith relies on one passage, included in both cases, wherein the supreme court stated:

"The general test as to whether there are separate offenses or one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. The particular facts and circumstances of each case determine the question. If there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense."

*Crosby*, 927 P.2d at 645 (quoting *Kimbel*, 620 P.2d at 518); *Kimbel*, 620 P.2d at 518 (quoting *People v. Howes*, 99 Cal.App.2d 808, 222 P.2d 969 (1950)).

¶ 18 In *Kimbel*, the defendant was charged with, and convicted of, felony theft based upon the aggregate value of items he had stolen over a period of time. *See Kimbel*, 620 P.2d at 517–18. The defendant argued that the "evidence showed two distinct thefts," *id.*, neither of which individually rose to the level of a felony; thus, his conviction and punishment should have been for no more than misdemeanor theft. *See id.* at 518. The supreme court, however, foreclos-

ed the defendant's argument, noting only that it was proper to consider both acts of embezzlement and acts of theft that occurred over a period of time as a continuous transaction so long as the State proved the continuous intent to steal on the part of the thief. *See id.* Similarly, in *Crosby*, the court noted "that although the transactions underlying Crosby's theft convictions occurred over a period of time, they were part of a single plan and should have been charged as a single offense." *Crosby*, 927 P.2d at 645. When viewed in isolation, these cases seem to support Smith's position. However, a careful review of the language of section 76–1–402 reveals the flaw in Smith's argument.

¶ 19 Section 76–1–402 applies to cases where *"the same act"* can be punished under different provisions. *Id.* (emphasis added); *see also State v. Suarez*, 736 P.2d 1040, 1042 (Utah Ct.App.1987) (highlighting the meaning of the phrase "the same act"). We find the circumstances of this case more analogous to the circumstances in *Suarez* than to the circumstances in either *Crosby* or *Kimbel*. In *Crosby*, we have a case that involved theft over time, an act involving proof of the same elements, which ultimately was determined to be a single act. *See Crosby*, 927 P.2d at 645. Similarly, in *Kimbel* we have a situation involving theft over time, an act that involves proof of the same elements and, much like *Crosby*, the supreme court determined Kimbel's behavior to be a single act worthy of felony prosecution. *See Kimbel*, 620 P.2d at 518.

¶ 20 In *Suarez*, however, the defendant was convicted of three counts of forcible sexual abuse of a minor stemming from a single episode. *See* 736 P.2d at 1041. Following his conviction, the defendant appealed and argued, inter alia, that two of his convictions stemmed from a single criminal episode where both involved the "touching of the genitals of the victim." *Id.* at 1042. In refuting his argument, we stated:

Defendant's argument is flawed in that he first placed his mouth on the victim's breast, the taking of indecent liberties, and then placed his hand on her vagina. *These are separate acts requiring proof of differ-*

*ent elements* and constitute separate offenses.

*Id.* (emphasis added). We conclude that *Suarez* presents a situation much more analogous to the instant case. Here, Smith was convicted of willful attempted tax evasion because of his concerted effort to hide his income from detection by the Commission through the use of three proxy bank accounts and his concerted efforts to ensure that virtually none of the payments made to his business were made in either his name or the name of his business. His conviction for failure to file a tax return rested solely on his clear failure or unwillingness to comply with the known requirement to file a return. Thus, as in *Suarez,* we conclude that "these are separate acts requiring proof of different elements and constitute separate offenses," *id.,* and therefore Smith's convictions are not subject to merger under the single criminal episode doctrine.

■ ¶ 21 Smith next argues that the trial court erred in refusing to submit his proposed "Good Faith Belief" instruction to the jury. " ' "Failure to give [a] requested jury instruction[ ] constitutes reversible error only if the[ ] omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." ' " *State v. Stringham,* 2001 UT App 13, ¶ 17, 17 P.3d 1153 (quoting *Summerill v. Shipley,* 890 P.2d 1042, 1044 (Utah Ct.App.1995) (additional citation omitted)). We have heretofore declined to require a good faith instruction in criminal trials, opting instead to adopt the majority position that " 'a jury finding that the defendant has acted knowingly and willfully is inconsistent with a finding that the defendant acted in good faith.' " *Id.* at ¶ 20 (quoting *United States v. Gross,* 961 F.2d 1097 (3d Cir.1992)). Thus, "if a jury instruction 'already contains a specific statement of the government's burden to prove the[ ] elements of the crime, the good faith instruction is simply a redundant version of the instruction on those elements.' " *Id.* (quoting *Gross,* 961 F.2d at 1103). Accordingly, so long as the instructions submitted to the jury

specifically address the government's burden to prove that Smith knowingly or intentionally committed tax evasion, the trial court's refusal to submit Smith's proposed instruction to the jury was not error.

■ ¶ 22 After examining jury instructions submitted by both the State and Smith, the trial court submitted a packet of thirty-two instructions to the jury. Instruction seven explained that the jury must find that the State had proven its case beyond a reasonable doubt and explained that proof beyond a reasonable doubt

> does not require proof to an absolute certainty. Now by reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. It must be a reasonable doubt and not a doubt which is merely fanciful or imaginary or based on a wholly speculative possibility.

Instruction twenty-eight informed the jury that a person's conduct was intentional or willful "when it is his conscious objective or desire to engage in the conduct or cause the result." Through instruction thirty-three, the jury was informed that to find Smith guilty of failure to make, render, sign or verify a tax return, in violation of section 76–8–1101(1)(b), they must find that he "intentionally or willfully evaded" any applicable tax or requirement for the year 1995 and that he "[f]ailed to make, render, sign, or verify any return or to supply information within the time required." Similarly, instruction thirty-four informed the jury that to convict Smith of willful evasion of income tax, in violation of section 76–8–1101(1)(c), they must find beyond a reasonable doubt that he willfully or intentionally attempted to evade any or all taxes applicable to the income he received in 1995. Finally, the court took great pains to instruct the jury concerning the definition of a Utah resident for tax purposes, the definition of taxpayer under Utah law, the general meaning of taxable income, the applicable meaning of gross income for tax purposes, and the definition of exempt income for tax purposes.[7]

---

7. The court also included two instructions concerning evidence introduced by Smith that he

argued formed the basis for his belief that he was not subject to the income tax laws of the State of

¶ 23 These instructions, when read in concert, fully explained to the jury its burden. The instructions fully explained the elements of the crime, the requisite intent, and the concept of reasonable doubt. Accordingly, the trial court did not err in refusing to submit Smith's proposed good faith instruction because the instructions that were submitted to the jury "ensured that a jury finding of good faith would lead to acquittal." *Stringham*, 2001 UT App 13 at ¶ 23, 17 P.3d 1153; *cf.* *United States v. Neujahr*, 1999 WL 125718, **5–6, 1999 U.S.App. LEXIS 3770, **16–17 (4th Cir. March 10, 1999) (noting "the [United States] Supreme Court has decided that it is not necessary that a trial court issue a separate good faith instruction").

█ ¶ 24 Smith next argues that the evidence was insufficient to support a conviction for either tax evasion or the willful failure to file a tax return. Smith's argument focuses solely on his assertion that to prove either offense, the State had to prove that Smith was required to file a federal income tax return for 1995.

█ ¶ 25 Smith, however, points to no authority that contradicts or contravenes previous decisions issued by the Utah Supreme Court expressly rejecting this argument. *See Nelson v. Utah State Tax Comm'n*, 903 P.2d 939, 940 (Utah 1995); *Jen-*

*sen v. State Tax Comm'n*, 835 P.2d 965, 969–71 (Utah 1992). In *Nelson*, the supreme court stated that "the duty to file a [state tax] return arises when a person earns income, not when his or her income is assessed for tax purposes." *Nelson*, 903 P.2d at 940. The court's treatment of the argument in *Jensen* was equally concise. In *Jensen* the court explained:

> Federal taxable income is defined by the Utah Code as taxable income under 26 U.S.C. § 63. Section 63 of title 26 of the United States Code, in conjunction with section 61, defines taxable income as all income from whatever source derived, including gross income derived from a business and compensation for services, such as fees, commissions, and fringe benefits.

*Jensen*, 835 P.2d at 969–70 (citations omitted). Thus, the court concluded, "[t]ax liability arises from the earning of income," and not from the assessment of tax liability by the federal government. *Id.* We can see nothing in our subsequent case law, or in the Utah Code, that alters this analysis. Therefore, we conclude the duty to file a federal tax return is not a predicate element of either state income tax evasion, or the willful failure to file a state income tax return. Accordingly, Smith's argument concerning the sufficiency of the evidence supporting his conviction is without merit, and we affirm the jury's verdict.[8]

Utah. Arguably, although neither instruction uses the phrase "good faith," these instructions satisfied Smith's request for a good faith instruction. However, because we conclude that the instructions as a whole properly instructed the jury regarding its burden and the meaning of willful and intentional, there is no need to address the effect of these specific instructions.

Furthermore, were we to conclude that the trial court erred in refusing to submit the instruction, "in light of all the evidence, it is clear that the error was harmless." *United States v. Harrold*, 796 F.2d 1275, 1284 (10th Cir.1986). The evidence presented to the jury showed that Smith had routinely paid his income tax prior to 1987. Following that year, Smith ran a business from his home, however all proceeds generated by the business were paid to one of three accounts held in names other than Smith's. In 1995, Smith withdrew a substantial amount from at least one of these accounts to pay his personal expenses and he neither claimed to have earned income during the year, nor did he file a tax return

involving either the income he generated through his business or for the money he had removed from the three accounts. "Thus, even if a good-faith instruction had been given, we are confident the result of the trial would have been the same." *Id.*

8. Moreover, the evidence strongly supports the jury's verdict. The evidence showed that prior to 1987 Smith routinely filed his State of Utah income tax returns and, when necessary, paid any tax liability. In 1995, Smith operated a business from his home that generated over $65,000 in gross revenue. Smith, however, required his customers to make their payments not to him, but to three accounts bearing different names, but on which he was a signatory. Moreover, throughout 1995, Smith accessed the funds deposited in these accounts to pay his personal expenses and at no point did he claim the funds as income. Finally, not only did Smith place the totality of his earned income in these accounts, he affirmatively failed to file a State tax return for 1995 even though it was clear that he had

## Restitution

### A. Preservation

¶ 26 Smith's final argument centers on the correctness of the trial court's restitution order. Smith argues that the trial court erred in ordering restitution without affording Smith either a hearing or an opportunity to be heard and that the trial court failed to consider the mandatory factors set forth in Utah Code Annotated section 76–3–201(8)(c) (1999). *See id.* The State responds that Smith waived any objection to the imposition of restitution through a letter he sent after restitution was imposed. We first address the State's waiver argument.

 ¶ 27 " '[A]s a general rule, claims not raised before the trial court may not be raised on appeal.' " *State v. Cram,* 2002 UT 37, ¶ 9, 46 P.3d 230 (quoting *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346). " '[T]he doctrine of waiver has application if [a] defendant[ ] fail[s] to raise claims at the appropriate time at the trial level, so the judge has an opportunity to rule on the issue.' " *Id.* (quoting *State v. Emmett,* 839 P.2d 781, 783–84 (Utah 1992)). "To preserve a claim or an objection for appellate review, the defendant must raise a timely or contemporaneous claim or objection." *Id.* In the instant case, after the trial court issued its memorandum ordering Smith to, inter alia, pay over $6,000 in restitution, Smith filed an objection. Through his objection, Smith stated that he "objects to and moves the Court to summarily deny the Plaintiff's proposed order on grounds that the Court lacks jurisdiction to grant the relief requested (no hearing is needed) and sets forth his reasons below." Thus, Smith affirmatively waived his right to a hearing on the issue of restitution.

¶ 28 However, while his objection document is inartfully drawn, a cursory review of the document supports his contention that he objected to the amount he had been ordered

to pay, did not understand why the trial court had settled on that amount, and saw no reason to conduct a hearing when it was clear, at least in his mind, that the State's request was so obviously flawed. Accordingly, Smith preserved his argument concerning the quality of the trial court's findings.

### B. Basis For The Imposition of Restitution

 ¶ 29 "In our view, subsection 76–3–201(4)(d)(i) does not require that a sentencing court reference on the record the factors listed in subsections 76–3–201(8)(b) and (c). Rather, it merely states that the sentencing court set forth the reasons for its restitution decision in the record." *State v. Weeks,* 2002 UT 98, ¶ 25 n. 11, 61 P.3d 1000. "[T]here is no mandatory requirement in the language of the statute that a sentencing court make a record setting forth its reasoning as to each of the factors in its restitution order, only that it *consider* each factor and make a record setting forth the reasons for its decision." *Id.* at ¶ 23. Here, the trial court order sets forth that:

> The defendant is hereby Ordered as follows in addition to anything already ordered in this case:
>
> (1) File all past Utah State returns from 1990 to present;
>
> (2) That the filings must account for income and expenses of the defendant;
>
> (3) That the defendant must present supporting documentation with such returns;
>
> (4) That restitution is hereby set at $6,105.94, for purposes of this criminal case only, but that this amount does not bind the Utah State Tax Commission, and further only relate(s) to tax year 1995.

 ¶ 30 In the absence of any additional record findings,[9] we are forced to limit our

---

read and previously complied with the state tax laws. Thus, the jury was presented with ample evidence from which it could reasonably conclude that Smith was guilty of the charged crimes. *See State v. Stringham,* 2001 UT App 13, ¶ 29, 17 P.3d 1153 (stating "[w]e will reverse a jury verdict only when we find that the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust" (quotations, citations and alterations omitted)).

9. Although it is permissible to assume that the trial court considered all of the factors set forth in Utah Code Annotated section 76–3–201(8), *see State v. Weeks,* 2002 UT 98, ¶ 24, 61 P.3d 1000;

review to the language of the restitution order. Based upon the language of this order, Smith's confusion concerning the restitution amount is easily understood. Nowhere in the order does the court explain its rationale for the amount ordered, nor does it disclose the reasoning underlying its decision. Thus, we remand this issue to the trial court for reconsideration of its restitution order and the entry of findings supporting whatever amount is eventually assessed against Smith.[10]

## CONCLUSION

¶ 31 The trial court properly refused Smith's motion to merge the two charges levied against him because he failed to demonstrate that one was a lesser included offense of the other or that the convictions fell under the single criminal episode doctrine. The trial court also did not err in refusing to submit Smith's good faith instruction to the jury because the instructions that were submitted fully explained the elements of the crimes and the level of intent that the jury was required to find to convict. Moreover,

*State v. Robertson*, 932 P.2d 1219, 1235 (Utah 1997), *overruled on other grounds by Weeks*, 2002 UT 98 at ¶ 24, 61 P.3d 1000, this recourse is only available if it is reasonable to do so. *See Weeks*, 2002 UT 98 at ¶ 24, 61 P.3d 1000. Here, the judge who considered the State's restitution motion, and issued the restitution order, was not the judge who oversaw Smith's trial or sentencing. Thus, we conclude that it would not be reason-

contrary to Smith's assertion, the evidence was clearly sufficient to support both convictions. Finally, while Smith affirmatively waived his right to a restitution hearing, the trial court erred in failing to set forth the reasons underlying the restitution order on the record.

¶ 32 Accordingly, we affirm Smith's convictions for willful evasion of income tax and failure to file an income tax return. However, we remand the issue of restitution to the trial court to allow the trial court the opportunity to make findings in support of an appropriate restitution order.

¶ 33 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and JAMES Z. DAVIS, Judge.

able to assume that all of the restitution factors had been considered absent some evidence to the contrary.

10. We leave to the trial court's discretion the decision to entertain any additional evidence from Smith on the issue of restitution, but can see no reason at this time to deny Smith this opportunity to be heard.