*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2014 UT 16**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Appellee,*

*v.*

JOAN A. STEED and FRANK J. STEED,
*Defendants and Appellants.*

No. 20110389
Filed May 16, 2014

Third District, Salt Lake
The Honorable Robin W. Reese
No. 081907873

Attorneys:

Sean D. Reyes, Att'y Gen., Andrew F. Peterson, Asst. Att'y Gen.,
Salt Lake City, for appellee

Max D. Wheeler, Rodney R. Parker, and
Richard A. Van Wagoner, Salt Lake City, for appellants

CHIEF JUSTICE DURRANT authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE NEHRING, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1    Following a criminal jury trial, Frank and Joan Steed (the Steeds), husband and wife, were each convicted of three counts of failure to render (file) a proper tax return and one count of engaging in a pattern of unlawful activity. They were acquitted of four counts of tax evasion and two additional counts of failure to file a proper tax return. The failure-to-file statute required proof that the Steeds (1) failed to file, and (2) that they did so with one of three specific intents. At the close of the State's case, the Steeds submitted a Motion to Dismiss based on the State's failure to

provide sufficient evidence of two of the three specific intent alternatives. We conclude that the State presented insufficient evidence of these two contested intent alternatives, and therefore the court erred in denying the Steeds' Motion to Dismiss. The court should have submitted only the one remaining intent alternative to the jury.

¶2   Ultimately, the failure-to-file charges were presented to the jury, but instead of submitting the single supported intent alternative to the jury, the court excluded that alternative and submitted the two unsupported intent alternatives to the jury. The excluded intent alternative was the only basis for conviction that was supported by the State's evidence, so we also conclude that there was insufficient evidence to support the verdicts. As a result, the court erred in denying the Steeds' Motion to Arrest Judgment. We therefore reverse each of the Steeds' failure-to-file convictions and remand with instructions to enter a judgment of acquittal. We also reverse the pattern counts, which were contingent on these convictions. Because we reverse on sufficiency of the evidence grounds, we do not reach the Steeds' remaining arguments.

## BACKGROUND

¶3   In 2000, the Steeds moved to Utah from Mississippi to continue their real estate development business. Once in Utah, they settled in the Uintah Basin and began to develop "mini-ranch" home sites. The Steeds formed seven different Utah corporations, each of which was involved in various aspects of the business, including building cabins, operating motels, and developing culinary water systems. They also hired an accountant, Roger Oliphant, who helped them file tax returns in both 2001 and 2002.

¶4   Several years later, the Utah State Tax Commission (Commission) conducted an audit of the Steeds' sales tax collection. In the course of the audit, the auditor requested copies of the Steeds' tax returns for 2003–2006, as well as supporting documentation. Mr. Oliphant had been unable to file the Steeds' tax returns for these years, allegedly because the Steeds had failed to provide all of the necessary receipts and information. The sales tax auditor made approximately ten separate requests for the returns and other documents; when the requests went unanswered, the auditor referred the matter for a criminal investigation.

¶5 Agent Scott Mann of the Commission led the investigation. He concluded that the Steeds had not filed personal tax returns from 2003–2007. An information was then filed against the Steeds in 2008, charging each of them separately with five counts of failing to file a state tax return for the years 2003–2007, four counts of tax evasion for the years 2003–2006, and one count of a pattern of unlawful activity.

¶6 Before trial, the Steeds filed a motion asking the court to require the State to prove a tax deficiency as an element under the failure-to-file and tax evasion statutes. The trial court, consistent with our opinion in *State v. Eyre*,[1] concluded that the tax evasion statute requires proof of a tax deficiency, but it also concluded that the failure to file statute does not require proof of a tax deficiency. In a later ruling, the trial court also ordered the State to disclose its tax calculations to the Steeds so they could prepare their defense based on the State's proposed estimate. In response, the State provided a one-page summary of its calculated income figures for the Steeds, without any explanation of how the figures were calculated. The Steeds then requested a more detailed computation of the State's proposed adjusted gross income (AGI) figures. The State provided a new chart, though it provided no additional information about the State's method of calculating the Steeds' AGI.

¶7 The day before trial was scheduled to begin, and as a result of the State's noncompliance, the Steeds moved to preclude the State from offering evidence of the Steeds' income at trial. The trial court granted the motion. But on the first scheduled day of trial, April 27, 2010, the court reversed its ruling by concluding that the State may not have fully understood the prior orders. As a result, the court struck the trial date and gave the State another opportunity to provide the Steeds with the necessary calculations. Just over two months later, on July 7, 2010, the State identified David Bateman as its expert witness and provided the Steeds with a copy of his report, which was later used extensively at trial. Trial was then scheduled to commence just over two months later, on September 14, 2010.

¶8 At trial, Mr. Bateman explained the calculations in his report. He began by identifying $45 million in total deposits among the Steeds' various accounts. He then eliminated certain deposits from this figure, including intercompany transfers,

---

[1] 2008 UT 16, 179 P.3d 792.

deposits from unknown payors, uncategorized deposits, deposits less than $1,000, and checks written for under $1,000. He then categorized the Steeds' various expenses in order to subtract them from this figure and calculate the Steeds' income for each year. Particularly, Mr. Bateman testified that "[if] there was a question as to whether it might be a business expense or a personal expense, it's in the personal category." And by his calculations, the Steeds had an alleged total of $8.6 million in personal expenses over the years in question. By his calculations, the Steeds' "bottom line" income totaled more than $16 million for the years in question. On a large chart presented to the jury, Mr. Bateman claimed that the Steeds' "taxable income" was $3,512,006 in 2003; $4,341,695 in 2004; $5,779,525 in 2005; and $2,912,117 in 2006.

¶9 On cross examination and in rebuttal, the Steeds disputed many of Mr. Bateman's categorized "apparent personal expenses," noting that millions of these purported personal expenses actually included costs for cabin construction, infrastructure, a $3 million water tank, and other business expenses. In response, Mr. Bateman testified that even if he had recategorized all of these expenses as business expenses, the Steeds would still have had a combined total of $5.5 million in net income for the years in question. Importantly, Mr. Bateman was only allowed to testify about the Steeds' income and not to calculate a tax. And Mr. Bateman was careful to avoid claiming that he was calculating a tax, despite his "estimated taxable income figure," noting carefully that he had no tax experience.

¶10 Several other witnesses testified, including Agent Mann, who asserted that the Steeds received multiple large payments to both their business and personal deposit accounts. He then testified that, if these payments constituted gross income, the Steeds were required to file a tax return. The State also called Arlene Jones to testify. She was an employee who worked for Mr. Oliphant, the Steeds' former accountant. She testified that, based on the information that the Steeds had provided to her office, the Steeds owed thousands of dollars in taxes for 2003 through 2006. She also testified that the Steeds had told their accountants that they did not want to pay any taxes at all. Finally, Delores Furniss, custodian of records for the Commission, testified that the Steeds did not file returns for the years in question. She also testified that individuals must file a return if their gross income exceeds certain threshold amounts, even if no federal return was filed.

¶11 Before trial had commenced, the Steeds submitted a proposed elements instruction that was consistent with how the court interpreted the failure-to-file statute. The elements instruction ultimately submitted to the jury was consistent with the Steeds' proposed instruction. This instruction was problematic in that it permitted the jury to convict on only two of the three possible intent alternatives set forth in the statute, excluding the third alternative—the "intent to evade . . . a[] requirement of Title 59." In effect, this meant the State had to prove that the Steeds (1) intentionally failed to file, and (2) did so with one of two included specific intents—either the intent to evade a tax or the intent to evade a "lawful requirement of the Utah State Tax Commission."

¶12 The Steeds conceded multiple times that they earned sufficient income each year to trigger the filing requirement, including in their briefing before us: "[i]t was never disputed that the defendants had sufficient income to trigger the filing requirement." At trial, the Steeds conceded the same—that they had sufficient income to trigger the filing requirement. But the fact that a taxpayer has gross income, which triggers the filing requirement, does not necessarily mean that the same taxpayer has tax liability, which is a separate requirement altogether. And the Steeds argued in a Motion to Dismiss that the State failed to present evidence either of a tax deficiency or of their intent to evade a "lawful requirement" of the Commission. Their motion was denied.

¶13 The jury ultimately acquitted the Steeds of all counts of tax evasion, as well as two counts of failure to render a proper tax return. But the Steeds were each convicted of three counts of failure to render a proper tax return, along with one count of a pattern of unlawful activity. The Steeds moved to arrest the judgment, largely on the same insufficiency of the evidence grounds upon which they relied in their Motion to Dismiss. This final motion was denied and the Steeds timely appealed. After we heard oral argument, we requested supplemental briefing from the parties on several issues surrounding potential defects in the jury instructions. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

## STANDARD OF REVIEW

¶14 In contesting the sufficiency of the evidence, the Steeds challenge several rulings: (1) the trial court's denial of their Motion to Dismiss, (2) the trial court's denial of their Motion to Arrest Judgment, and (3) the verdict itself. In reviewing a motion

to dismiss, the trial court must decide whether the State has met its burden of "produc[ing] believable evidence of all the elements of the crime charged[; if it has not,] the trial court must dismiss the charges."[2] On appeal, "[t]he grant or denial of a motion to dismiss is a question of law [that] we review for correctness, giving no deference to the decision of the trial court."[3] "When our review requires us to examine statutory language, we look first to the plain meaning of the statute"[4] and then "review [the] district court's interpretation of a statute for correctness."[5]

¶15 In reviewing a challenge to the sufficiency of the evidence after the verdict is rendered—whether the challenge is based on the trial court's denial of a motion to arrest judgment or whether it is based on the verdict itself—"we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict."[6] "We reverse a jury verdict only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted."[7]

## ANALYSIS

¶16 On appeal, the Steeds challenge their convictions on three grounds: first, they challenge the sufficiency of the evidence supporting both the State's case and the verdicts; second, they challenge the constitutionality of Utah's expert notice statute; and third, they argue that the trial court abused its discretion in failing to strike the testimony of Mr. Bateman, the State's expert witness. Because we reverse due to insufficiency of the evidence, we do not reach the Steeds' remaining arguments.

---

[2] *State v. Arave*, 2011 UT 84, ¶ 24, 268 P.3d 163 (internal quotation marks omitted).

[3] *State v. Hamilton*, 2003 UT 22, ¶ 17, 70 P.3d 111 (second alteration in original) (internal quotation marks omitted).

[4] *Id.* (internal quotation marks omitted).

[5] *H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 19, 203 P.3d 943.

[6] *Hamilton*, 2003 UT 22, ¶ 18 (internal quotation marks omitted); *State v. Robbins*, 2009 UT 23, ¶¶ 14–15, 210 P.3d 288 (holding the same with respect to motions to arrest judgment).

[7] *Hamilton*, 2003 UT 22, ¶ 18 (internal quotation marks omitted).

¶17 We first conclude that the trial court erred in interpreting the failure-to-file statute. Next, in reviewing the trial court's denial of the Steeds' Motion to Dismiss, we do not defer to its interpretation of the statute, but rather consider whether the State presented sufficient evidence under the statute as it is correctly interpreted. Ultimately, we conclude that the State presented evidence of only one of the three specific intent alternatives under the Statute, so it was error for the trial court to submit the other two unsupported intent alternatives to the jury and deny the Steeds' Motion to Dismiss.

¶18 Finally, we review the court's denial of the Steeds' Motion to Arrest Judgment, as well as the Steeds' challenge to the verdict itself. Because the only supported intent alternative was not submitted to the jury, and instead the two unsupported intent alternatives were submitted, we conclude that there was insufficient evidence to support the verdicts and it was therefore error for the court to deny the Steeds' Motion to Arrest Judgment. Accordingly, we reverse and remand with instructions to enter a judgment of acquittal on all counts.

## I. THE TRIAL COURT INCORRECTLY INTERPRETED THE FAILURE-TO-FILE STATUTE

¶19 We first answer two threshold questions raised by the Steeds' challenge to their failure-to-file convictions: first, how to correctly interpret the elements of the statute; and second, whether the requirement to file a tax return arises from Title 59 or, alternatively, the Commission's rules. The trial court erred in its interpretation on both issues. First, the trial court incorrectly concluded that the statute provides for two, rather than three, specific intent alternatives. Second, the court erroneously interpreted the filing requirement to be a "requirement of the State Tax Commission" rather than a "requirement of Title 59."

### A. The Trial Court Erred in Excluding Title 59 as a Specific Intent Alternative

1. The Failure-to-File Statute Provides for Three Specific Intent Alternatives and Requires Proof of a Tax Deficiency Under the First Alternative

¶20 At issue in this case are two separate statutes—Utah's failure-to-file statute and Utah's tax evasion statute. The failure-to-file statute provides, in relevant part, that

> [a]ny person who, with intent to evade any tax, fee,
> or charge as defined in Section 59-1-401 or
> requirement of Title 59, Revenue and Taxation, or

any lawful requirement of the State Tax Commission, fails to make, render, sign, or verify any return or to supply any information within the time required by law . . . is guilty of a third degree felony.[8]

The statute requires that the State prove not only the necessary actus reus—here, an omission: the intentional failure to "make, render, sign, or verify" a tax return—but also separately that it was done with one of three specific intents—the intent to evade (1) a "tax, fee, or charge as defined in Section 59-1-401"; (2) a "requirement of Title 59, Revenue and Taxation"; or (3) "any lawful requirement of the State Tax Commission."[9] Although it is possible to merge the first two intent alternatives as one because they are not offset with a comma,[10] the remainder of the statutory scheme is inconsistent with this interpretation.[11] Accordingly, we

---

[8] UTAH CODE § 76-8-1101(1)(c)(i) (2013). The failure-to-file statute has since been amended, effective May 13, 2014. Because the amendments are material, we cite to the 2013 version of the statute, which is substantively the same version that was in effect at the time of the alleged offenses. *See State v. Losee*, 2012 UT App 213, ¶ 1 n.1, 283 P.3d 1055.

[9] *Id*.

[10] *Id*. (requiring a defendant to have the "intent to evade any tax, fee, or charge as defined in Section 59-1-401 or requirement of Title 59, Revenue and Taxation." (no comma between "59-1-401" and "or")).

[11] The prior version of the failure-to-file statute, as well as its companion provisions, confirm that the failure-to-file statute provides for three separate intent alternatives. For example, the prior version of the statute clearly provides for three distinct intent alternatives: "[a]ny person who, with intent to evade any tax *or requirement of Title 59* or any lawful requirement of the State Tax Commission, fails to make, render, sign, or verify any return or to supply any information within the time required by law . . . is guilty of a third degree felony." UTAH CODE § 76-8-1101(1)(c)(i) (2003) (emphasis added). *Accord State v. Smith*, 2003 UT App 179, ¶ 13, 72 P.3d 692 ("Thus, to convict [defendant] of violating Subsection (1)(b), the State was required to prove that [defendant] failed to file a state tax return with the intent to evade any (a) tax, (b) requirement of Title 59, or (c) lawful requirement of the State Tax Commission." (citing UTAH CODE § 76-8-1101(1)(b) (1999)).

(continued…)

conclude that the statute provides for three specific intent alternatives.

¶21 Under the statute, the State must first prove the necessary actus reus—that a defendant intentionally or willfully failed to file. To establish that a defendant failed to file, the State can provide a certification by the Commission or other relevant evidence. And in proving that the defendant did so intentionally, the State may rely upon direct evidence or, where such evidence is lacking, intent "may be inferred from the actions of the defendant or from surrounding circumstances."[12] For example, in the failure-to-file context, intent may be inferred from the fact that a defendant filed tax returns in prior years.[13]

---

The statute has since been revised and restyled to include "fee, or charge as defined in Section 59-1-401" and, in the process, a comma was omitted at the end.

Although this revision raises an ambiguity, the Utah tax code contains other companion provisions affirming that three distinct alternatives were envisioned. For instance, the section of the tax code directing for criminal penalties under the failure-to-file statute provides that "[a]ny person who, with intent to evade any tax *or any requirement of this chapter* [Title 59], or any lawful requirement of the commission, fails to pay the tax, or to make, render, sign, or verify any return, or to supply any information, within the time required by or under this chapter . . . is liable for a civil penalty as provided in Section 59-1-401, and is also guilty of a criminal violation as provided in Section 59-1-401." UTAH CODE § 59-10-541(4) (emphasis added).

And finally, section 59-1-401, which is the penalty statute mentioned in section 59-10-541, provides that "[a] person who, with intent to evade a tax, fee, or charge *or requirement of this title* or any lawful requirement of the commission, fails to make, render, sign, or verify a return or to supply information within the time required by law . . . is guilty of a third degree felony." *Id.* § 59-1-401(12)(c)(i) (emphasis added).

[12] *Smith*, 2003 UT App 179, ¶ 16 (internal quotation marks omitted). The jury was instructed accordingly. ("Intent being a state of mind is seldom susceptible of proof by direct and positive evidence and may ordinarily be inferred from acts, conduct, statements and circumstances.").

[13] *United States v. Bohrer*, 807 F.2d 159, 161 (10th Cir. 1986) ("[F]iling tax returns in prior years is evidence of willfulness.").

¶22 Next, the State must establish the necessary specific intent. "Where a specific intent is an element of a crime, the specific intent must be proven as an independent fact and cannot be presumed from the commission of the unlawful act."[14] Thus, the State must do more under the statute than simply establish that a defendant failed to file his or her taxes; the State must prove, either by direct evidence[15] or inference[16] that the defendant failed to file a tax return with the "conscious objective or desire"[17] to evade either a tax, a requirement of Title 59, or a requirement of the Commission. But irrespective of the method employed, it is imperative that the State prove intent in order to convict under Utah's criminal tax statutes. A defendant's failure to file without a corresponding intent gives rise only to civil penalties, which are much less severe.[18]

¶23 And in order to establish that the Steeds had the intent to evade a tax or a requirement of Title 59 or the Commission, the State must also prove that the Steeds actually owed a tax or that they failed to comply with an applicable requirement of Title 59 or the Commission. This is because "it is logical to conclude that, if no tax is owing [or no other requirement is binding], there is no tax [or requirement] to evade."[19] It is also important to note that

---

[14] 22 C.J.S. *Criminal Law* § 40 (2006).

[15] *Id.*

[16] 21 AM. JUR. 2D *Criminal Law* § 119 (2008) (specific intent may be "inferred from the circumstances . . . and the actions of the defendant").

[17] UTAH CODE § 76-2-103(1) ("A person engages in conduct . . . [i]ntentionally, or with intent or willfully with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result."). The jury instructions were in accord.

[18] *Compare id.* § 59-1-401(2)–(11) (providing for differing civil penalties depending on the nature and severity of a taxpayer's actions, including the underpayment of a tax or avoidance of tax obligations); *with id.* § 59-1-401(12) (discussing criminal penalties associated with certain actions, including tax evasion and the failure to file).

[19] *See State v. Eyre*, 2008 UT 16, ¶ 11, 179 P.3d 792 ("To prevail on a felony tax evasion claim, the State must therefore show that a

(continued…)

in many cases a defendant may fail to comply with a requirement of Title 59 or the Commission but owe no taxes at all. This is because a taxpayer's obligations under Title 59 and the Commission's regulations are often independent of the taxpayer's tax liability. For example, Title 59's requirement to file a tax return is triggered by a threshold level of gross income,[20] even if there is ultimately no tax liability on that income.

2. The Tax Evasion Statute Requires Proof of an Attempt to Evade a Tax

¶24 By way of contrast, and in order to clarify why the failure-to-file and tax evasion statutes do not merge, we review the tax evasion statute at this juncture. It provides that

> [a]ny person who intentionally or willfully attempts to evade or defeat any tax, fee, or charge as defined in Section 59-1-401 . . . is, in addition to other penalties provided by law, guilty of a second degree felony.[21]

Under this statute, as with the first intent alternative under the failure-to-file statute, the State must first prove a tax deficiency.[22] In fact, the State must prove a tax deficiency every time it is required to prove that a defendant had the "intent to evade a tax"[23]—whether it is in a civil or criminal context.

¶25 Second, the State must prove that the defendant "intentionally or willfully" attempted to evade or defeat this tax. Under Utah law, in order to prove "attempt," the State must show both that the defendant intended to commit the crime and that the defendant "engage[d] in conduct constituting a substantial step toward the commission of the crime."[24] "The

---

tax was, in fact, due and owing; merely establishing income does not suffice.").

[20] See *infra* ¶30 & n.31.

[21] UTAH CODE § 76-8-1101(1)(d)(i).

[22] *Eyre*, 2008 UT 16, ¶ 11.

[23] *Id.* ¶ 12 (internal quotation marks omitted).

[24] UTAH CODE § 76-4-101(1) ("For purposes of this part, a person is guilty of an attempt to commit a crime if he: (a) engages in conduct constituting a substantial step toward commission of the crime; and (b)(i) intends to commit the crime; or (ii) when

(continued…)

'mere intent to violate a . . . criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct.'"[25] In other words, the tax evasion statute requires the State to prove both that a defendant intended to evade a tax *and* that he or she took a "substantial step" toward the same. In *Jensen v. State Tax Commission*, we provided examples of what might constitute willful attempt to evade:

> [b]y way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.[26]

¶26 The failure-to-file statute's first intent alternative does not require the State to prove that a defendant took a "substantial step" toward committing tax evasion, but only that the defendant had the "intent to evade [a] tax." While a jury may surely infer that a defendant intended to evade a tax by engaging in any of the acts listed in our *Jensen* decision, it may also infer such an intent from affirmative statements or other, lesser conduct. Because the failure-to-file and tax evasion statutes thus require different proof, the two offenses do not merge.[27]

3. The Court Erred in Excluding Title 59 as a Specific Intent Alternative

¶27 Although the failure-to-file statute provides for three specific intent alternatives, the court interpreted the statute to

---

causing a particular result is an element of the crime, he acts with an awareness that his conduct is reasonably certain to cause that result.").

[25] *State v. Arave*, 2011 UT 84, ¶ 30, 268 P.3d 163 (alteration in original) (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 106 (2007)).

[26] 835 P.2d 965, 973 (Utah 1992) (quoting *Spies v. United States*, 317 U.S. 492, 499 (1943)).

[27] *See Smith*, 2003 UT App 179, ¶¶ 11–20.

include only two in several of its rulings, excluding Title 59. First, the Steeds filed a motion in limine before trial requesting that the court interpret the failure-to-file statute to require proof of a tax deficiency, since our decision in *State v. Eyre* made this an open question.[28] The trial court denied the Steeds' motion and also interpreted the statute to criminalize "multiple variations of conduct," including either the intent to evade a tax or any lawful requirement of the Commission, thereby excluding Title 59 as a specific intent alternative.

¶28 The trial court committed the same interpretive error in denying the Steeds' Motion to Dismiss, which was argued after the State presented its case. In denying their Motion, the court reiterated its position that there were two alternative theories—"an intent to evade a tax or an intent to evade a lawful requirement, a requirement that you file a return if you have income equal to or greater than those stated amounts would be a violation of the law if the jury accepts it." And because of this incorrect interpretation of the statute, the court also excluded Title 59 as an intent alternative in the jury instructions. Instructions 18 and 25 (included separately for each defendant) stated that:

> Before you can convict the defendant . . . you must find from the evidence and beyond a reasonable doubt, each and every one of the following elements of that offense:
>
> 1. That the defendant failed to make, render, sign or verify [an] Individual Income Tax Return within the time required under Utah law; and
>
> 2. that the defendant did so with an intent to evade *any tax or other lawful requirement of the Utah State Tax Commission*.

(Emphasis added). The State did not object to the exclusion of Title 59 from the jury instructions, though it did request that additional language from the statute be included under element one—that there was evidence the Steeds "fail[ed] . . . to supply any information within the time required by law."[29] Because the

---

[28] 2008 UT 16, ¶ 10 n.2.

[29] UTAH CODE § 76-8-1101(1)(c)(i).

failure-to-file statute provides for *three* intent alternatives, it was error for the court to construe the statute otherwise and exclude Title 59 as a grounds for conviction.

*B. The Trial Court Erred in Construing the Filing Requirement as a "Lawful Requirement of the State Tax Commission" Rather than a "Requirement of Title 59"*

¶29 The next essential statutory interpretation question is whether the requirement to file a tax return is a "requirement of Title 59" or whether it is a "lawful requirement of the State Tax Commission." As we explain below, the filing requirement is a statutory requirement housed in Title 59, whereas the Commission rules are ancillary and housed within the administrative code. We then conclude that the court erred in conflating the two bodies of law, which exacerbated the court's previously discussed error of excluding Title 59 as a specific intent alternative.

1. The Filing Requirement Is a Requirement of Title 59

¶30 The general filing requirement is found in Utah Code section 59-10-502 (part of Title 59), which requires that "every resident individual" file a state tax return in any year they are required to file a federal return.[30] And a federal return must be filed whenever certain income thresholds are met—a tax does not necessarily need to be owed.[31] Accordingly, Title 59 also requires residents to file income tax returns whenever these same income thresholds are met, which the Steeds concede were met in this case. And Utah Code section 59-10-514(1)(a) further requires that taxpayers file their Utah tax returns "on or before [April 15th] . . . or . . . on or before [the federal filing date]."

---

[30] In full, the statute provides that "[a]n income tax return with respect to the tax imposed by this chapter [Title 59] shall be filed by: (1) every resident individual, estate, or trust required to file a federal income tax return for the taxable year; and (2) every nonresident individual, estate, or trust having federal gross income derived from sources within the state for the taxable year and required to file a federal income tax return for such taxable year."

[31] *See Jensen*, 835 P.2d at 969–70 (holding that the duty to file is triggered when income is earned rather than when tax liability is ultimately assessed on that income).

¶31 The Commission may impose additional requirements on taxpayers, which it has done with the record-keeping requirement[32] and the verification requirement.[33] The Commission also has the authority to regulate the filing requirement under Utah Code section 59-10-514(3), which provides that "[i]n accordance with Title 63G, Chapter 3, Utah Administrative Rulemaking Act, the commission may make rules, prescribing what constitutes filing a return with the commission." But while the Commission is given authority to "prescrib[e] what constitutes filing a return," the filing requirement itself, as noted above, is a "requirement of Title 59" rather than "a[] lawful requirement of the State Tax Commission." In fact, the Commission's publications incorporate the language from Utah Code section 59-10-502 when discussing the filing requirement.[34]

¶32 The State argues, however, that the filing requirement is both a requirement of Title 59 and of the Commission, citing Utah Code section 59-10-501(1) (2004), which states:

> [e]very person liable for any tax imposed by [Title 59], or for the collections thereof, shall keep such records, render such statements, make such returns,

---

[32] UTAH ADMIN. CODE r. 865-9I-18(A) (2003) ("Every taxpayer shall keep adequate records for income tax purposes of a type which clearly reflect income and expense, gain or loss, and all transactions necessary in the conduct of business activities."), *recodified at* r. 865-9I-18(1) (2014) (no substantive changes).

[33] *Id.* r. 865-9I-22(B) (2003) ("All returns filed with the Tax Commission must be signed by the taxpayer or his duly authorized agent as provided by law. Unsigned returns are not valid returns for income tax purposes and if unsigned, the benefits of proper filing may be denied the taxpayer.").

[34] *E.g.* UTAH STATE TAX COMMISSION, INDIVIDUAL INCOME TAX TC-40 FORMS & INSTRUCTIONS 2 (2013):

**Who Must File**

1. Every Utah resident or part-year resident who must file a federal income tax return;

2. Every nonresident with income from Utah sources who must file a federal return; and

3. Taxpayers wanting a refund of any income tax overpaid.

and comply with such rules as the commission may from time to time by rule prescribe. Whenever in the judgment of the commission it is necessary, it may require any person, by notice served upon such person or by rule, to make such returns, render such statements, or keep such records, as the commission deems sufficient to show whether or not such person is liable for tax under this chapter.

While it is true that the Commission may give notice and clarify how returns are to be filed,[35] the general filing requirement is nonetheless still imposed by Title 59, rather than by the Commission.[36]

2. The Court Erroneously Conflated Requirements of Title 59 and the State Tax Commission

¶33 In denying the Steeds' Motion to Dismiss, the court incorrectly concluded that the filing requirement was a "lawful requirement of the State Tax Commission":

the way I read [the failure-to-file statute,] the State may also be successful in its prosecution if it's able to convince the jury beyond a reasonable doubt that the defendants admitted failure to file was done with the intent to evade a lawful requirement of the state Tax Commission and I would conclude that . . .the requirement . . . that those who have gross incomes equal to or greater than the amount shown in the Plaintiff's Exhibit 15 is in fact that kind of lawful requirement referred [to] in the statute.

---

[35] For example, the Commission has promulgated regulations that clarify how to file returns when one spouse is a resident and the other is not, UTAH ADMIN. CODE r.865-9I-6 (2014), and when two separate returns must be filed, *id.* r. 865-9I-8 (2014).

[36] The State's briefing conflates the two obligations—calling the filing requirement a "general obligation[]" and that "the reference to requirements of the Tax Commission encompasses many or most of the general Title 59 obligations." Though it is true that a taxpayer may be required to comply with a requirement of Title 59 *and* an additional Commission requirement, the two requirements are separate and may not be required of all taxpayers.

Later in its decision, the court reiterated the same incorrect interpretation:

> I think it could be in the alternative, an intent to evade a tax or an intent to evade a lawful requirement, a requirement that you file a return if you have income equal to or greater than those stated amounts would be a violation of the law if the jury accepts it.

¶34 And this error, like the exclusion of Title 59 as an intent alternative, made its way into the jury instructions. As explained above, *supra* ¶¶ 27–28, the jury was instructed that it could convict the Steeds on at least one of only two intent alternatives—the "intent to evade any tax or other lawful requirement of the Utah State Tax Commission." The court then submitted an additional jury instruction—No. 20—that clarified what constituted a "lawful requirement of the Utah State Tax Commission." It read:

> [l]awful requirements of the Utah State Tax Commission include the requirement that a **resident of Utah is required to file a Utah State Individual Income Tax Return for any given year in which he or she has gross income in excess of the exemption amount. Gross income means the total of all income received before making any deductions allowed by law. Gross income includes all income from whatever source derived and includes compensation for services, including fees, commissions, and similar items.**

¶35 This instruction misstates the law. As we explained above, the filing requirement is a requirement of Title 59—not of the Commission. And the jury could not have properly convicted the Steeds for intentionally evading the filing requirement, because the filing requirement is *not* a lawful requirement of the Commission, despite a statement to the contrary in Instruction 20. To convict the Steeds for intentionally evading the filing requirement, the elements instruction would need to have included Title 59 as a specific intent alternative, which it failed to do.

## II. THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT THE STEEDS' CONVICTIONS UNDER THE FAILURE-TO-FILE STATUTE

¶36 As described above, the failure-to-file statute requires proof of at least one of the three specific intent alternatives. In

reversing the Steeds' convictions, we first consider whether the State presented sufficient evidence of the Steeds' "intent to evade . . . a[] lawful requirement of the State Tax Commission" or the Steeds' "intent to evade a[] tax." Ultimately, we conclude that the State presented insufficient evidence of either, so the court erroneously denied the Steeds' Motion to Dismiss as to these two specific intent alternatives. In reaching this result, we also discuss the State's burden in establishing a husband's and wife's separate tax liabilities.

¶37  But we also conclude that the State did present sufficient evidence of the Steeds' "intent to evade . . . [a] requirement of Title 59," so it would have been improper for the court to dismiss the failure-to-file charges altogether at the motion to dismiss stage. We then review the sufficiency of the evidence supporting the verdicts. Because the only supported intent alternative—the "intent to evade . . . [a] requirement of Title 59"— was ultimately excluded from the jury instructions, and there was insufficient evidence to support the two intent alternatives that were ultimately submitted, we conclude that it was error for the court to deny the Steeds' Motion to Arrest Judgment. We therefore reverse the failure-to-file convictions, as well as the pattern counts that hinged on the failure-to-file convictions, and remand with instructions to enter a judgment of acquittal.

*A. The State Presented No Evidence of Any Lawful Requirement of the State Tax Commission*

¶38  After the State presented its case, the Steeds moved to dismiss, arguing that

> [i]n this case the only evidence offered that relates to the element of intent is that it was done with the intent to evade the tax. The statute says or any lawful requirement of the State Tax Commission but there has been no evidence offered by the State that would draw into play any other lawful requirement. We haven't heard any witness or anything about some other lawful requirement that might be the intent of the taxpayers.

In response, the court asked the State

> [b]ut you're not arguing any other part, that there's some other revenue—or that some other requirement of the State Tax Commission that they have attempted to evade, right? You're essentially

arguing they have an income greater than the threshold, they had to file?

To which the State responded: "Yes. . . . They have to file. That's our central argument to the case." And despite additional prompting by the court, the State failed to identify a single lawful requirement of the Commission purportedly violated by the Steeds. Instead, the State furthered the incorrect argument that the filing requirement (housed in Title 59) was a requirement of the Commission.

¶39 The trial court denied the Steeds' Motion and agreed with the State, concluding that the State had presented sufficient evidence of the Steeds' intent to evade the filing requirement. Although we agree that the State presented evidence that the Steeds intended to evade the filing requirement, we note once again that the filing requirement is a "requirement of Title 59," and this intent alternative was excluded as a basis for conviction in the jury instructions. Accordingly, evidence of the Steeds' intent to violate the filing requirement was insufficient to meet the State's burden in proving the Steeds' intent to violate a lawful requirement of the Commission. On appeal, the State identified a number of Commission requirements, but it failed to cite to any mention of these requirements at trial.

¶40 We likewise find nothing in the record indicating that the State presented evidence of the Steeds' intent to violate a lawful requirement of the Commission. At trial the State never argued that the Steeds violated a filing demand or other requirement of the Commission — their argument and evidence at trial centered on the Title 59 filing requirement—that the Steeds' "fundamental duty and obligation" "was to file returns and file truthful returns without an intent to evade." We therefore conclude that the State presented insufficient evidence of the Steeds' intent to violate a lawful requirement of the Commission, and the court erred in denying the Steeds' request to dismiss this intent alternative.

### B. The State Presented Insufficient Evidence of the Steeds' Individual Tax Liability

¶41 We also conclude that the State presented insufficient evidence of the Steeds' "intent to evade [a] tax." To meet its burden under this intent alternative, as discussed above, *supra* ¶¶ 24–26, the State had to prove both that the Steeds had a tax deficiency and that they intended to evade their taxes. Because we conclude that the State presented insufficient evidence of the Steeds' individual tax liabilities, we do not reach the issue of

intent. In ruling on the insufficiency of the evidence, we first discuss the State's general burden in criminal tax cases when it is required to prove a tax deficiency. We then discuss the State's burden when a husband and wife are tried in a joint proceeding.

¶42 When the Commission assesses civil penalties for a defendant's failure to pay taxes, it must establish what the defendant's tax liability was. This is often difficult because the defendant has not filed a tax return, so the Utah code requires only that the Commission "estimate the tax, fee, or charge due from the best information or knowledge the commission can obtain."[37] In a criminal setting, the State must establish the defendant's tax liability beyond a reasonable doubt, however, and it "must prove that it has conducted a full and adequate investigation of the defendant's finances and that it has followed up all leads furnished by the taxpayer that are 'reasonably susceptible of being checked.'"[38] In calculating tax liability, the State must subtract from a defendant's gross income any "exempt income and allowable deductions."[39] This excludes itemized deductions, since they are not "allowable" when a defendant fails to file a return.[40] The government must also give credit for any offsetting business expenses and deductions that it can reasonably ascertain.[41]

---

[37] UTAH CODE § 59-1-1406(2)(a).

[38] *United States v. Schafer*, 580 F.2d 774, 777 (5th Cir. 1978) (quoting *Holland v. United States*, 348 U.S. 121, 138 (1954)).

[39] *State v. Eyre*, 2008 UT 16, ¶ 11, 179 P.3d 792.

[40] *See Maxwell v. United States*, 80 F. Supp. 2d 1352, 1353 (N.D. Ga. 1999) ("The Internal Revenue Code ('Code') allows a taxpayer, in determining his taxable income, to itemize his deductions rather than take a standard deduction. However, a taxpayer must elect to take itemized deductions; the Code specifies that '[u]nless an individual makes an election under this subsection for the taxable year, no itemized deduction shall be allowed for the taxable year.' The election is to be made 'on the taxpayer's return.'" (alteration in original) (citations omitted)); *see also Murray v. Comm'r*, 104 T.C.M. (CCH) 112, *3 (2012) ("As a result of not filing his 2006 Federal income tax return, petitioner is not allowed to claim an itemized deduction for theft loss.").

[41] *United States v. Esser*, 520 F.2d 213, 217 (7th Cir. 1975) ("The government must do everything that is reasonable and fair under

(continued…)

¶43 But as the State conducts this investigation, it "need not show a tax deficiency with precision,"[42] nor must it, as noted by the trial court, "perfectly recreat[e] the taxpayer's returns." In fact, "a de minimis tax deficiency may be sufficient to meet this requirement, [but] we caution that the State may have difficulty proving the intent element of tax evasion without a greater showing."[43] We also note that the State may opt to prove tax liability using different methods, including the "net worth plus nondeductible expenditures method."[44] When a "taxpayer's records are inadequate as a basis for determining income tax liability," this may be the only possible method to establish a defendant's tax deficiency.[45] Once the State meets its burden, the burden then shifts to the defendant to disprove the State's income figures and to "prove any further allowable deductions not previously claimed."[46]

¶44 Where the State wishes to pursue a case against both a husband and wife for criminal tax charges, two important issues arise: first, whether to try them jointly; and second, how a joint trial will affect the State's burden of proof. As to the issue of a joint trial, it is well established that the State can try a husband and wife, as well as others, in a joint proceeding on criminal tax charges.[47] Indeed, joint trials "promote efficiency and 'serve the

---

the circumstances to identify any non-income transactions and deduct them from total deposits. Further, all proper deductions and credits must be subtracted.").

[42] *Eyre*, 2008 UT 16, ¶ 12 n.7.

[43] *Id.*

[44] *Fowler v. United States*, 352 F.2d 100, 102 (8th Cir. 1965) (citing *Holland*, 348 U.S. at 125).

[45] *Holland*, 348 U.S. at 125.

[46] *United States v. Lacob*, 416 F.2d 756, 760 (7th Cir. 1969); *see also* 13 AM. JUR. TRIALS 1 *Defending Federal Tax Evasion Cases* § 62 (2014) ("If the defendant claims that no tax would be due if he were allowed to take additional deductions not reflected in the reports made by him, the duty of going forward on this matter of proof shifts to him.").

[47] *United States v. Emond*, 935 F.2d 1511, 1517 (7th Cir. 1991) (upholding joint trial of husband, wife, and other codefendants on tax evasion and other related charges); *United States v.*

(continued…)

interests of justice by avoiding the scandal and inequity of inconsistent verdicts,'" but the danger is that they can also result in prejudice.[48] As such, the court must decide carefully whether severance is warranted, or whether it can tailor alternative relief to guard against the danger of prejudice.[49]

¶45 If the court decides that severance is not warranted, it must still ensure that the State meets its burden of proof separately as to the husband and wife. In establishing a tax deficiency, the State's burden will differ depending on the filing status election (or nonelection) of the husband and wife. But regardless of any taxpayer's election, it is a "long-recognized legal principle that a husband and wife are separate and distinct taxpayers even where they have filed a joint Federal income tax return."[50] For instance, even though a joint filing election will permit the State to impute the same tax deficiency to both the husband and the wife, each defendant must be treated separately to ensure that the other elements of the crime, including intent, are proved individually.

¶46 This notion of individual liability runs throughout Utah's civil and criminal tax codes. For example, the requirement to file a tax return applies to "every resident [and] . . . nonresident *individual*"[51] earning income in the state—not to every resident or nonresident couple. Furthermore, criminal penalties also attach individually: the failure-to-file statute makes it a crime for "[a]ny

*Manfredi*, 628 F. Supp. 2d 608, 644 (W.D. Pa. 2009) (upholding tax evasion indictments brought jointly against husband and wife). *See* 13 AM. JUR. TRIALS 1 *Defending Federal Tax Evasion Cases* § 49 (2014) ("It is not uncommon for both husband and wife to be jointly indicted on tax evasion charges arising out of their joint tax returns, although they may sometimes be indicted separately on charges based on a joint return." (collecting cases)).

[48] *Zafiro v. United States*, 506 U.S. 534, 537–39 (1993) (noting instances where risk of prejudice is especially acute); *see United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995) (husband prejudiced in joint trial where wife asserted mens rea defense that introduced "highly inflammatory evidence of [the husband's] bad character").

[49] *Zafiro*, 506 U.S. at 538–39.

[50] *Rodney v. Comm'r*, 53 T.C. 287, 307 (1969).

[51] UTAH CODE § 59-10-502(1)–(2) (emphasis added).

*person*" to fail to file a tax return.[52] It is for this reason that a judgment against one spouse for tax fraud lacks res judicata effect in a later prosecution against the other.[53] Accordingly, the State must meet its burden of proof separately for each spouse, even if it chooses to try them in a joint proceeding.

¶47 We also note that the State's burden of proving a tax deficiency is affected by the filing status of the husband and wife, and one of three situations will apply to the spouses' joint prosecution. First, the husband and wife may have elected to file a joint return. If this is the case, then the State need only prove a shared tax liability amount, since joint and several liability attaches as to the entire tax deficiency.[54] Second, the husband and wife may have elected to file separately, in which case each spouse will have a distinct and individual tax deficiency.[55] Third, and last, the husband and wife may have failed to file altogether, and thus failed to elect a filing status. "Where no return has been filed or no joint return has been filed, there is no sound basis for concluding that the tax liability of each spouse is the same."[56]

---

[52] *Id.* § 76-8-1101(1)(c)(i) (emphasis added).

[53] *Rodney*, 53 T.C. at 307.

[54] Ian M. Comisky et al., 1 Tax Fraud & Evasion § 2.03[6][a] (2014) ("Where a joint return is filed, the tax liability may properly be viewed as joint, and each spouse may be charged with evasion of the joint tax liability."); *Kruse v. Comm'r*, 100 T.C.M. (CCH) 524, at *2 (2010) (noting that in cases where a husband and wife have filed jointly and have a tax deficiency, "each spouse generally is jointly and severally liable for the entire tax due for that taxable year.").

[55] Comisky, *supra* note 54, § 2.03[6][a].

[56] *Id.*; *United States v. McKee*, 506 F.3d 225, 244 (3d Cir. 2007) ("A married individual's tax responsibilities are separate from those of her spouse with respect to her own income unless she elects to file jointly." (citing 26 U.S.C. §§ 1(a), 6013)); *cf. United States v. Reed*, 821 F.2d 322, 325 (6th Cir. 1987) ("Based on the evidence presented at trial, the most reasonable inference the jury would draw is that the [defendants] would have chosen to minimize their tax liability by filing joint returns.").This principle applies for both federal and Utah state tax purposes. *See* Utah Code § 59-10-503(1) (establishing that a husband's and wife's

(continued…)

Though a husband and wife may file jointly if they meet the requirements under Utah Code section 59-10-503, they are not required to do so, and the Commission cannot impose a joint tax deficiency unless taxpayers have so elected.

¶48 We recognize that where no return has been filed or where taxpayers have kept inadequate records, establishing any tax deficiency—whether individual or joint—can be a difficult task. And establishing a husband's and wife's individual tax liability where they receive pass-through income from joint ventures, partnerships, or other entities, can be an especially complex task that may ultimately turn on each spouse's respective ownership interest in the particular entities in question.[57] That said, the complexity of the case does not absolve the State of meeting its burden of proof separately as to each defendant. The State must still establish that each defendant had a tax liability for each of the years in question.

¶49 Here, the State failed to meet its burden. At the outset, we recognize that the State presented evidence of the Steeds' pooled income and tax liabilities. Mr. Bateman, the State's expert, calculated that the Steeds' collective taxable income from 2003 to 2006 was $16.5 million. The State then called a state tax auditor, Brett Wilding, to the stand to calculate a shared amount of tax liability for each year. But the State never introduced evidence of the Steeds' individual tax liabilities, even though in the restitution phase it was established that they greatly differed. We find this error particularly significant because the Steeds had filed separately in the previous years, indicating to the State that they had differing tax liabilities.

¶50 Because the Steeds failed to file tax returns for each tax year at issue, and thereby did not elect to file jointly, the State was required to separately establish Frank Steed's and Joan Steed's tax liability. This argument was made before the trial court in the Steeds' Motion to Dismiss. The State argued that it did not have to establish individual liability because there was "evidence of commingling" and because the Steeds earned pass-through

---

election for their Utah tax return is contingent on their election on their federal return).

[57]*Comm'r v. Tower*, 327 U.S. 280, 286–87 (1946) (concluding in a tax deficiency proceeding that a wife was not a partner in a business, which made income attributable only to the husband).

income from various entities. The court recognized that, per the State's own expert's testimony, the Steeds' individual tax deficiencies may very well depend on their individual ownership of the various entities. The court then asked the State how the jury could go about properly apportioning income between the Steeds, to which the State responded: "it's impossible" and that it wasn't the burden "of the State to be perfect, just to be good." In reply, the Steeds argued that it could be done but that there was "no attempt by the State to do this."

¶51 The court acknowledged that this was the "trickiest" issue in the Steeds' Motion to Dismiss, and that "it is something that the State could have done and probably should have done a better job with." But it ruled against the Steeds because it felt that the State presented sufficient evidence of the Steeds' shared "management of each of the companies" and because the Steeds "shared equally incomes produced by all of these entities . . . and they jointly utilized income for their living expenses." This was error. A spouse cannot be imputed with a tax deficiency—particularly under a criminal statute—simply because he or she shares or jointly uses income produced by the other spouse. It is the State's burden to correctly apportion income to each spouse, which it never did in this case. We therefore conclude that it was error for the court to deny the Steeds' request to dismiss this intent alternative.

*C. We Reverse Because the State Presented Insufficient Evidence to Support the Steeds' Convictions*

¶52 Although the State presented insufficient evidence of the Steeds' "intent to evade a[] tax" and the Steeds' "intent to evade . . . a[] lawful requirement of the State Tax Commission," the State *did* present sufficient evidence of the Steeds' "intent to evade . . . [a] requirement of Title 59."[58] It would thus have been appropriate for the trial court to submit this remaining intent alternative to the jury. But as established above, the court excluded Title 59 as an intent alternative from the jury instructions. And the State never objected to the exclusion of Title 59 because, like the court, the State incorrectly understood the filing requirement to be a "lawful requirement of the State Tax Commission" rather than a "requirement of Title 59." Because the court committed multiple errors, we review both the court's denial of the Steeds' Motion to Dismiss, as well as the verdicts

---

[58] *Supra* ¶ 39.

themselves, as challenged in the Steeds' Motion to Arrest Judgment.

¶53 First, in reviewing a trial court's grant or denial of a motion to dismiss, we will reverse "if upon reviewing the evidence and all inferences that can be reasonably drawn from it," we conclude that the State presented no "believable evidence of all the elements of the crime charged."[59] As we concluded above, the State presented no evidence of the Steeds' intent to evade a lawful requirement of the Commission, and it also failed to introduce evidence of the Steeds' individual tax liabilities in order to establish their "intent to evade [a] tax." Because the court misunderstood the State's burden with respect to the establishment of a tax deficiency, and because it misinterpreted the failure-to-file statute, it erroneously denied the Steeds' Motion to Dismiss and permitted unsupported charges to go to the jury.

¶54 Second, "[t]he standard for determining whether an order arresting judgment [or declining to arrest judgment] is erroneous is the same as that applied by an appellate court in determining whether a jury verdict should be set aside for insufficient evidence."[60] That is, the court may reverse only where the State has failed to present evidence "from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt."[61] Here, the insufficiency of the evidence problem pervaded the verdict, since the State presented insufficient evidence to support convictions under the failure-to-file statute as the statute was presented in the jury instructions.

---

[59] *State v. Hamilton*, 2003 UT 22, ¶¶ 40–41, 70 P.3d 111 (internal quotation marks omitted); *see* UTAH R. CRIM. P. 17(p) ("At the conclusion of the evidence by the prosecution, or at the conclusion of all the evidence, the court may issue an order dismissing any information or indictment, or any count thereof, upon the ground that the evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.").

[60] *State v. Robbins*, 2009 UT 23, ¶ 15, 210 P.3d 288 (internal quotation marks omitted).

[61] *Hamilton*, 2003 UT 22, ¶ 41 (internal quotation marks omitted).

¶55 We therefore reverse on two separate bases—first, the court's failure to dismiss the two unsupported intent alternatives as requested in the Steeds' Motion to Dismiss. At that point, the court could have permitted the Title 59 intent alternative to be submitted to the jury, so a complete reversal based on the erroneous denial of the Steeds' Motion to Dismiss would have been improper. But we also reverse because there was insufficient evidence to support the failure-to-file charges as ultimately presented in the jury instructions, and because the State never objected to the exclusion of Title 59 as an intent alternative. Given the above, we reverse and remand with instructions to enter a judgment of acquittal. "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."[62] We also reverse the separate convictions based on the Steeds' alleged pattern of unlawful activity, since they hinged on the failure-to-file convictions.

## CONCLUSION

¶56 Because the State presented insufficient evidence of the Steeds' "intent to evade a[] tax" and the Steeds' "intent to evade . . . a[] lawful requirement of the State Tax Commission," the trial court erred in denying the Steeds' Motion to Dismiss and in submitting these intent alternatives to the jury. The court also erred in denying the Steeds' Motion to Arrest Judgment because there was insufficient evidence to support the charges as presented in the jury instructions. We accordingly reverse the failure-to-file counts, as well as the pattern counts, and remand the case to the trial court with instructions to enter a judgment of acquittal.

––––––––––––

[62] *Burks v. United States*, 437 U.S. 1, 11 (1978); *United States v. Miles*, 327 Fed. App'x. 797, 798 (10th Cir. 2009) ("[T]he government is entitled to one fair opportunity to present its evidence and make its case for conviction."); *Anderson v. Mullin*, 327 F.3d 1148, 1156 (10th Cir. 2003) ("[A]fter the government has failed to prove its case, it should not be afforded a second bite at the apple." (internal quotation marks omitted)).